STATE of Wisconsin, Plaintiff-Appellant,

v.

P.G. MIRON CONSTRUCTION COMPANY, INC., Defendant-Respondent-Petitioner.†

Supreme Court

*No. 92–0841. Oral argument January 7, 1994.—Decided March 8, 1994.*

(Also reported in 512 N.W.2d 499.)

†Reconsideration filed March 11, 1994. Reconsideration denied, with costs, April 19, 1994.

For the defendant-respondent-petitioner there were briefs by *Paul G. Kent, William E. McCardell* and

*DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* Madison and oral argument by *Paul G. Kent.*

For the plaintiff-appellant the cause was argued by *Alan Lee,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

Amicus curiae brief was filed by *Lynn E. LeGault,* Executive Director, Madison for The Wisconsin Chapter, The Associated General Contractors of America, Inc.

JANINE P. GESKE, J. This is a review of a published decision of the court of appeals, *State v. P.G. Miron Const. Co., Inc.,* 175 Wis. 2d 476, 498 N.W.2d 889 (Ct. App. 1993), which held that the doctrine of sovereign immunity in art. IV, sec. 27 of the Wisconsin Constitution, restricting suits against the state, applies to arbitration procedures in state contracts. The decision of the court of appeals reversed a decision of the circuit court for Dane County, Daniel R. Moeser, Circuit Judge. The circuit court found that the doctrine of sovereign immunity applies to suits at law, not to arbitration. As a result, the dispute between the P.G. Miron Construction Company, Inc. (Miron) and the Wisconsin Department of Administration (DOA) could be resolved by means of arbitration under ch. 788, Stats., pursuant to the arbitration clause agreed to in the contract.

The issues before this court are:

(1) Whether the doctrine of sovereign immunity in art. IV, sec. 27 of the Wisconsin Constitution, which restricts suits against the state, applies to arbitration procedures in state contracts; and

(2) whether the state has authorized or consented to the use of arbitration in the construction contract executed between Miron and the DOA.

We hold that the use of arbitration under the contract between Miron and the state does not violate the doctrine of sovereign immunity because arbitration does not subject the state to suit. Further, we hold that the claims procedure articulated in secs. 16.007[1] and 775.01,[2] Stats., does not provide the exclusive means for processing and resolving claims against the state. Rather, the arbitration clause in the contract executed between Miron and the DOA provides a means of conflict resolution under ch. 788, consistent with the state policy to encourage arbitration as an alternative to

---

[1] Section 16.007, Stats., provides in pertinent part:

**16.007 Claims Board. (1)** *Purpose.* The claims board shall receive, investigate and make recommendations on all claims of $10 or more presented against the state which are referred to the board by the department [of administration]. No claim or bill relating to such a claim shall be considered by the legislature until a recommendation thereon has been made by the claims board.

. . .

**(3)** *Procedure.* When a claim has been referred to the claims board, the board may upon its own motion and shall upon request of the claimant, schedule such claim for hearing . . ..

. . .

**(5)** *Findings.* The board shall report its findings and recommendations, on all claims referred to it, to the legislature . . ..

[2] Section 775.01, Stats., provides:

**775.01 Actions against state; bond.** Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11(3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state.

costly and protracted litigation. However, we note that any award granted at the conclusion of the arbitration process may become the substance of a suit. Therefore, we also hold that Miron must submit any claim it may want to assert against the state to the claims board for processing, pursuant to secs. 16.007 and 775.01, Stats. Enforcement of an arbitration award under ch. 788 is not appropriate because it is contrary to the statutory process required for claims against the state.

The facts of this case are as follows. In April of 1987, the DOA entered into a contract with Flad & Associates of Wisconsin, Inc.[3] Flad was to provide architectural and engineering services for an addition to the Clinical Science Center at the University of Wisconsin, Madison. In November of the same year, the DOA executed a second contract with Miron, valued at $6.5 million, pursuant to which Miron was to provide all general contracting for the building project. In addition to all the other elements of the contract with Miron, including costs, plans, and other conditions, an arbitration clause was added by the state. The arbitration clause specifically invoked the provisions of ch. 788, Stats.[4]

---

[3] The DOA is a state agency which was authorized to enter into the construction contract with Flad, pursuant to sec. 16.85, Stats., and the Wis. Admin. Code, ch. ADM 20. Contracts executed between the DOA and a private party are not considered to be valid or effectual for any purpose until approved by the appropriate authority. In this case, the signature of the Governor was required to give the contract effect.

[4] Section 788.01, Stats., provides:

**788.01 Arbitration clauses in contracts enforceable.** A provision in any written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any contro-

During the summer of 1988, a dispute arose among the parties regarding allegedly faulty structural steel connections. Flad and Associates believed that one of Miron's subcontractors, Phoenix Steel, Inc., should have been responsible for the design of the connections. Phoenix, however, countered that it was not responsible for the design. So as to not interrupt progress on the project, the parties agreed to determine responsibility for additional costs once all work was completed. The project was completed in 1989, and Miron subsequently sought reimbursement from the state for the additional costs arising out of the dispute with Phoenix.

The arbitration clause of the contract between Miron and the DOA established a two-step dispute resolution procedure. First, Miron was to file a claim with Flad, the architect/engineer, in order to review the request. That was done in May, 1989. In November, 1989, DOA accepted Flad's recommendation that it deny the Miron claim.

In May, 1990, Miron undertook the second step of the procedure when it filed a demand for arbitration with the American Arbitration Association (AAA). Listing the State of Wisconsin as the defendant, Miron stated that the claim was for extra project costs resulting from defective contract documents, defective contract administration, and field charges. By June of 1990, the AAA informed the concerned parties that there was indeed an issue as to arbitrability and a

versy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that this chapter shall not apply to contracts between employers and employes, or between employers and associations of employes, except as provided in s. 111.10.

panel of arbitrators was chosen.[5] However, in December of that year, counsel for the state informed the panel that it would challenge the arbitrators' jurisdiction.

In a declaratory judgment action filed on February 12, 1991, the state requested the circuit court for Dane County to declare the following: (1) the arbitration agreement between the state and Miron does not apply to claims brought by Miron; (2) Miron's claims are barred by sec. 16.855, Stats.;[6] and (3) the claims made by Miron are barred by sovereign immunity as articulated in art. IV, sec. 27 of the Wisconsin Constitution.

The circuit court granted summary judgment to Miron and upheld the jurisdiction of the arbitration panel. Specifically, the court stated that the state had attempted to blur the distinction between arbitration and litigation. According to the court, arbitration is not tantamount to a lawsuit. Therefore, since sovereign immunity is applicable only to suits at law, it is inapplicable to arbitration.

[5] Contrary to the findings of the arbitrators, the state argues that because Miron did not allege any wrongdoing by the state, the provisions of the arbitration clause are not applicable.

[6] That section provides in part:

**16.855　Construction project contracts.** . . .

. . .

**(11)** A contractor shall be liable for any damages to another contractor working on the same project caused by reason of the former's default, act or nonperformance.

The state argues that the intent behind this statute was to make sure it was not in the position of indemnifying one contractor against another contractor's claim for damages. In this case, then, according to the state, a suit by Miron ought not be authorized for damages Miron claims were caused by Flad.

In March, 1993, the court of appeals reversed the decision of the circuit court and held that sovereign immunity did apply to arbitration, thereby denying the arbitrators personal jurisdiction over the state. Furthermore, it held that the state had not specifically consented to the use of arbitration. Chapter 788, Stats., could not be applied to the state because there is no express language in the act which would bring the state within its terms.

When reviewing a summary judgment decision, this court is required to apply the standards set forth in sec. 802.08, Stats., in the same manner as the trial court. *Maas v. Ziegler,* 172 Wis. 2d 70, 78, 492 N.W.2d 621 (1992). We are also asked to interpret state constitutional and statutory provisions, which are questions of law. This court decides questions of law without deference to the lower courts. *Elliott v. Donahue,* 169 Wis. 2d 310, 316, 485 N.W.2d 403 (1992).

Miron argues that the sovereign immunity clause does not apply to arbitration. We agree. Article IV, sec. 27 of the Wisconsin Constitution reads as follows:

> The legislature shall direct by law in what manner and in what courts suits may be brought against the state.

This language has been construed repeatedly to mean that the legislature has the exclusive right to consent to a suit against the state. *State ex rel. Teach. Assts. v. Wis.-Madison Univ.,* 96 Wis. 2d 492, 509, 292 N.W.2d 657 (Ct. App. 1980) (citing *Fiala v. Voight,* 93 Wis. 2d 337, 342, 286 N.W.2d 824 (1980)). *See also Lister v. Board of Regents,* 72 Wis. 2d 282, 291, 240 N.W.2d 610 (1976). Additionally, such legislative consent must be

clear and express. *Fiala,* 93 Wis. 2d at 342–43. In secs. 16.007 and 775.01, Stats., the state has "consented" to suit with the establishment of a specific claims procedure. Under sec. 16.007, a party may present a claim to the state claims board, which first holds a hearing and then makes a recommendation to the legislature to grant or deny the claim. If the legislature refuses to allow a claim against the state, the claimant may then, under sec. 775.01, bring an action against the state.

■ We conclude, however, that the statutory claims procedure is not applicable in this case because no *suit* was initiated against the state when Miron invoked its right to arbitration of the dispute, according to the contract. The doctrine of sovereign immunity was not violated, and there is no need for this court to determine whether the legislature expressly consented to arbitration.

"Suit" may be defined as

> any proceeding by one person or persons against another or others *in a court of law* in which the plaintiff pursues, *in such court,* the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or equity.

*See Black's Law Dictionary* 1434 (6th ed. 1990) (emphasis added). This court has consistently used the term "suit" in sovereign immunity cases as a reference to legal actions which seek resolution in a court of law. *Zinn v. State,* 112 Wis. 2d 417, 434–35, 334 N.W.2d 67 (1983) (the state cannot be sued without its consent and if immunity is properly raised, it deprives the court of personal jurisdiction); *Kenosha v. State,* 35 Wis. 2d 317, 322, 151 N.W.2d 36 (1967); *Schlesinger v. State,* 195 Wis. 366, 369, 218 N.W. 440 (1928) (a state cannot

be sued in its own courts without its consent); *Milwaukee Light, Heat & Traction Co. v. Ela Co.,* 142 Wis. 424, 428, 125 N.W. 903 (1910) (a suit from its initiation must continue as a judicial proceeding in the nature of a suit in court until its termination).

Resolution of issues raised in a suit which require litigation typically involves formalized procedural and evidentiary rules. Elements of the process, such as discovery, pretrial motions, and preparation of exhibits and witness lists culminate with the trial itself. *See Commercial Arbitration for the 1990's* 41 (Richard S. Medalie, ed., ABA 1991). Arbitration, on the other hand, is a method of alternative dispute resolution which occurs outside established or traditional tribunals of justice. Specifically, "[a]rbitration tribunals are not generally required to apply principles of substantive law or court-established rules of evidence." 1 Gabriel M. Wilner, *Domke on Commercial Arbitration,* sec. 1:01 at 2 (rev. ed. 1993). In this case, the circuit court correctly observed that "[a]rbitrators, unlike courts, obtain their authority from a contract, rather than from a statute or constitution, as courts do." *See Jt. School Dist. No. 10 v. Jefferson Ed. Assoc.,* 78 Wis. 2d 94, 101, 253 N.W.2d 536 (1977). Since arbitration is distinct from a judicial proceeding,

> 'its strongest points lie in those areas where it most widely differs from the courts. Arbitration and litigation have a similar goal . . .. In both processes questions of fact pertaining to the dispute at hand are critical. The major difference is the framework within which these questions are examined. The rules of law which provide such a framework in litigation are at most a minor part of the arbitration process.'

*Domke on Commercial Arbitration,* sec. 1:01 at 3 (quoting American Management Association, *Resolving Business Disputes: The Potential of Commercial Arbitration* 102 (1965)).

It has been the policy of this state and this court to foster arbitration as an alternative to litigation. *See Richco Structures v. Parkside Village, Inc.,* 82 Wis. 2d 547, 553, 263 N.W.2d 204 (1978); *McKenzie v. Warmka,* 81 Wis. 2d 591, 598, 260 N.W.2d 752 (1978); *Madison v. Frank Lloyd Wright Foundation,* 20 Wis. 2d 361, 374, 122 N.W.2d 409 (1963). The advantage of such a process lies in the avoidance of the formalities, delay, and expense of litigation. However, this process must be entered into voluntarily by both parties. *Jt. School Dist. No. 10,* 78 Wis. 2d at 101.

In the instant case, both Miron and the state, through its agency, the DOA, voluntarily agreed to include an arbitration clause in the contract, which stated in pertinent part:

**47. ARBITRATION**

A. No demand for arbitration of any claim, dispute or other matter may be made until the Division Administrator has reviewed the Architect/Engineer's decision as provided for in Article 33 of the General Conditions. If any claim, dispute or other matter remains unresolved after such review by the Administrator, arbitration may be initiated by either party to the dispute. Work shall progress during the period of arbitration. The demand for arbitration shall be filed in writing with the Division Administrator.

B. The agreement to arbitrate shall be strictly enforceable in accordance with Chapter 788, Wis.

> Stats. The general procedure for arbitration shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.

The arbitration clause specifically invoked the provisions of ch. 788, Stats., which states that "an agreement . . . to submit to arbitration . . . shall be valid, irrevocable and enforceable . . . ." Section 788.01. Both the state and the court of appeals conclude that subjecting the state to those provisions would deny the state the prerogative of determining how and in what manner claims made against it shall be resolved. However, the power to agree to arbitration is based on the right to contract. *Madison,* 20 Wis. 2d at 373. Here, the state has authorized the DOA to enter into building contracts. Section 16.85, Stats. Therefore, the state, by implication, has authorized the DOA to agree to alternative dispute resolution provisions within those contracts.

 We now reverse the decision of the court of appeals and conclude the following. First, the DOA was authorized by the state to enter into the construction contract with Miron, pursuant to sec. 16.885, Stats. Second, inclusion of an arbitration clause in the contract did not automatically subject the state to suit nor did it invoke a waiver of sovereign immunity. Rather, arbitration offered an efficient and cost-effective means of resolving construction disputes under the contract without the need for formalized judicial procedures. Third, at the conclusion of the arbitration process, Miron must submit any claim it may want to assert against the state to the claims board for processing, pursuant to secs. 16.007 and 775.01, Stats. Though the

arbitration process is distinct from a judicial proceeding, any award granted at the conclusion of arbitration may itself become the subject of a suit, since at that point, an actual claim has come into existence. Enforcement of an award under ch. 788 is not appropriate in this case because it is contrary to the statutory process required for claims against the state.

*By the Court.*—The decision of the court of appeals is reversed.