In the MATTER OF the PAYMENT OF WITNESS FEES IN
STATE V. Bruce BRENIZER, Polk County Case No. 92-CR-
45.

POLK COUNTY, Appellant,

v.

STATE PUBLIC DEFENDER, Respondent-Petitioner.

Supreme Court

*No. 93–0065. Oral argument September 9, 1994.—Decided
December 14, 1994.*

(Also reported in 524 N.W.2d 389.)

For the respondent-petitioner there were briefs by *Mark Lukoff,* first assistant state public defender and *Kenneth P. Casey,* Director, Appellate Division and oral argument by *Kenneth P. Casey.*

For the appellant there was a brief by *Joseph P. Guidote, Jr.* and *Polk County Corporation Counsel,* Balsam Lake and oral argument by *Joseph P. Guidote.*

Amicus Curiae brief was filed by *F. Thomas Creeron, III,* assistant attorney general and *James E. Doyle,* attorney general.

Amicus Curiae brief was filed by *Robert Horowitz* and *Stafford, Rosenbaum, Rieser & Hansen,* Madison for the Wisconsin Counties Association.

WILCOX, J. This is a review of a published decision of the court of appeals reversing an order of the circuit court that decreed that Polk County was financially responsible for the payment of the "necessary fees and expenses of the defense" in obtaining the assistance of certain expert witnesses on behalf of Bruce Brenizer. *See Polk County v. State Public Defender,* 179 Wis. 2d 312, 507 N.W.2d 576 (Ct. App. 1993). The circuit court for Polk County, Honorable James R. Erickson, found that the appointment of certain defense expert witnesses was necessary for the presentation of an adequate defense. The circuit court also found that due process required that the appointment of the experts be paid by Polk County. The court of appeals disagreed, concluding that the State Public

Defender (SPD), not Polk County, "must bear the cost of the court-ordered defense experts." *Id.* at 320, 507 N.W.2d at 579. This conclusion was not challenged by the SPD. The only issue on review before this court is whether the SPD can invoke the defense of sovereign immunity to preclude Polk County from challenging a circuit court order mandating that the county pay for appointed defense experts. We affirm the court of appeals.

This case has both an interesting factual and procedural background. The underlying case involves a criminal action initiated on behalf of the state by the Polk County District Attorney's office against Bruce Brenizer. *See State v. Brenizer,* Case No. 92 CF 45. On April 13, 1992, Brenizer was charged in a complaint with five counts of first-degree intentional homicide, contrary to sec. 940.01(1), Stats. The case now before us involves a question of civil liability stemming from a circuit court ruling on payment of expert witness fees during the underlying criminal proceeding.

On June 30, 1992, Brenizer's defense attorney, Assistant State Public Defender John A. Kucinski, pursuant to *Ake v. Oklahoma,* 470 U.S. 68 (1985),[1]

---

[1] In *Ake,* the defendant was an indigent who was tried for two counts of murder and two counts of shooting with intent to kill. *Ake,* 470 U.S. at 72. During the guilt phase of the trial, the defendant's sole defense was insanity. *Id.* The defendant, however, could not afford a psychiatrist to inquire as to his mental capacity at the time of the offenses. *Id.* Counsel requested that the trial court arrange for a psychiatrist to perform the necessary examination or to provide funds so that the defense could arrange one. *Id.* The trial court concluded that the Constitution does not require that an indigent defendant receive the assistance of a psychiatrist in defending his or her case. *Id.* The Oklahoma Court of Criminal Appeals agreed. *Id.* at 73. The

petitioned the circuit court of Polk County for an order appointing defense experts in the fields of forensic pathology, anthropology, and dentistry in the case of *State v. Brenizer,* Case No. 92 CF 45. In the motion, Kucinski asserted that the appointment of these experts was essential to the defense of Brenizer. He also requested that Polk County be held responsible for the payment of any court-appointed experts. On August 13, 1992, Ellen K. Berz, the Chief of the Trial Division of the SPD, sent the circuit court an *ex parte* letter asserting that "the State Public Defender cannot solely accommodate the monetary requirements of this complex case." Berz then asked the circuit court "that any experts, which you deem justified and necessary to the case, be appointed by you at county expense." On August 20, 1992, the circuit court, *ex parte,* ordered "that the State of Wisconsin and/or Polk County pay the fair, reasonable, and necessary fees and expenses of the defense in obtaining the assistance of a qualified forensic expert in each of the areas of expertise of odontology, anthropology, and pathology to assist the defense . . . ."

Shortly thereafter, on August 27, 1992, Corporation Counsel for Polk County filed a motion to intervene in the *Brenizer* case. The Corporation Counsel sought to contest that part of the circuit court's order requiring Polk County to pay for the expert witness fees accrued on behalf of Brenizer. On August 31, 1992, the Polk County District Attorney filed a motion

United States Supreme Court, however, disagreed and held: "[W]hen a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." *Id.* at 74.

for reconsideration of the circuit court's August 20 order. The District Attorney requested that the circuit court reconsider its determination that the State and Polk County were jointly responsible for Brenizer's expert witness fees. The District Attorney sought an amended order holding the SPD completely responsible for the fees.

On September 2, 1992, Kucinski filed an objection to the intervention of Polk County. He argued that Polk County lacked standing to intervene in the *Brenizer* case. He also argued that the appointment of defense experts, as set forth in *Ake v. Oklahoma,* is an *ex parte* process and, therefore, Polk County did not have to be consulted. Several weeks later, the SPD, asserting itself as a "non-party," submitted a memorandum stating the following five assertions: (1) the circuit court lacks subject matter jurisdiction to order funding from the SPD; (2) the court lacks personal jurisdiction over the SPD since no process was served upon the agency; (3) sovereign immunity precludes the court from ordering the expenditure of funds by the SPD; (4) the court has the inherent authority to appoint and order payment of expert witness fees; and (5) the payment of the expert witness fees is an operating expense of the circuit court properly paid by the county pursuant to sec. 753.19, Stats.

The SPD also filed an affidavit with its memorandum. The affidavit, sworn to by Berz, set forth the monetary considerations for the SPD's "payment of expert witnesses in cases defended by SPD staff attorneys." The affidavit explained that the region containing Polk County budgeted $10,080 in 1992 for the payment of expert witness fees defended by the SPD. The affidavit also stated that the SPD budgeted $40,000 in 1992 for the state-wide homicide fund. This

fund could be tapped if the budgeted amount in a certain region was insufficient to cover the expenses relating to the defense of a homicide. Finally, the affidavit noted that the *Brenizer* case had depleted $9,660 of the $10,080 regional fund, as well as $6,000 of the $40,000 state-wide homicide fund. Thus, by its own admission, the SPD did not completely deplete either the regional fund or the state-wide homicide fund prior to its request that the county pay for the expert witness costs at issue.[2]

On September 28, 1992, the circuit court held a hearing to consider the issue of which entity would be held financially responsible for the appointed expert witnesses. Following argument by all interested parties, the circuit court struck the words "the State of Wisconsin and/or" from its August 20 order and ordered that Polk County was solely responsible for the fees and expenses of the defense in obtaining the assistance of various forensic experts.

Polk County subsequently appealed the circuit court's ruling, and the court of appeals reversed. The court of appeals addressed two procedural concerns before eventually concluding that the legislative directives, as well as the case law decision interpreting those directives, mandate that the SPD is responsible for the payment of the expert witnesses that testify at its behest. *See Polk County,* 179 Wis. 2d at 318–20, 507 N.W.2d at 578–79 (citing sec. 977.05(4)(h) and (i), Stats., and *In re Huisman,* 167 Wis. 2d 168, 482 N.W.2d 665 (Ct. App. 1992)). First, the court of appeals

---

[2] In regard to this particular matter, counsel for the SPD conceded at oral argument before this court that even if both funds had been completely drained by the *Brenizer* case, the SPD could have petitioned the legislature for emergency funds to pay for expert witnesses in future homicide cases.

concluded that Polk County had standing to appeal because it was aggrieved by the circuit court order appointing experts at the county's expense. *Polk County,* 179 Wis. 2d at 316–17, 507 N.W.2d at 578. Second, the court of appeals concluded that Polk County's appeal was not barred by sovereign immunity. *Id.* at 317, 507 N.W.2d at 578. It is this conclusion that the SPD takes umbrage with on review in this court. Specifically, the SPD presents the following issue for our consideration:

> Is Polk County's appeal [of the circuit court's order] a 'suit against the state' within the meaning of Wis. Const. Art. IV, sec. 27, and thereby barred by the doctrine of sovereign immunity?[3]

As an initial matter, we recognize that circuit courts are "endowed with all judicial powers essential to carry out the judicial functions delegated to them." *State v. Cannon,* 199 Wis. 401, 402, 226 N.W. 385, 386 (1929). This judicial power extends to the appointment of counsel for an indigent defendant. *See State v. Lehman,* 137 Wis. 2d 65, 76, 403 N.W.2d 438, 440 (1987) ("The trial court has the authority to appoint counsel

---

[3] Although the SPD phrases the issue in terms of whether Polk County's *appeal* of the circuit court order is barred by Art. IV, § 27 of the Wisconsin Constitution, we believe that a proper consideration of the sovereign immunity issue necessarily involves a discussion in the context of the entire proceeding. Consequently, although the ultimate conclusion that we reach today only specifically relates to whether Polk County's appeal of the circuit court order is barred on sovereign immunity grounds, nonetheless, we make reference to the entire procedural and factual backdrop of the case to provide an appropriate framework.

whenever in the exercise of its discretion it deems such action necessary."). Further, as noted in *State v. Holmes,* 106 Wis. 2d 31, 40, 315 N.W.2d 703, 708 (1982) (citation omitted): " 'Circuit courts have the incidental power necessary to preserve the full and free exercise of their judicial functions, and to that end may, in appropriate cases, make *ex parte* orders without formally instituting an action to secure the desired relief.' " Consequently, there is no dispute that the trial court had the authority to appoint expert witnesses in an *ex parte* manner. Further, there is no contention that the circuit court erroneously exercised its discretion in appointing the expert witnesses.

■■■■

Article IV, § 27 of the Wisconsin Constitution provides: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Both parties recognize that this court has construed this provision to mean that the legislature has the exclusive right to consent to a suit brought against the state and its various agencies. See, e.g., *State v. P.G. Miron Const. Co., Inc.,* 181 Wis. 2d 1045, 1052, 512 N.W.2d 499, 503 (1994); *Fiala v. Voight,* 93 wis. 2d 337, 342, 286 N.W.2d 824, 827 (1980); *Metzger v. Department of Taxation,* 35 Wis. 2d 119, 132, 150 N.W.2d 431, 438 (1967). Both parties also recognize that the effect of a defense based on the state's sovereign immunity from suit is to deprive the trial court of personal jurisdiction over the state. See *Lister v. Board of Regents,* 72 Wis. 2d 282, 291, 240 N.W.2d 610, 617 (1976). Where the parties disagree is on the preliminary question of whether this provision applies to the factual scenario at hand.

This case requires us to interpret Art. IV, § 27 of the Wisconsin Constitution. We interpret provisions of the Wisconsin Constitution *de novo.* See *State v. Beno,* 116 Wis. 2d 122, 136–38, 341 N.W.2d 668, 674 (1984). In *Beno,* this court set forth the appropriate analysis for interpreting provisions of the Wisconsin Constitution: (1) the plain meaning of the words in the context used, (2) the historical analysis of the constitutional debates and of what practices were in existence in 1848; and (3) the earliest interpretation of the provision by the legislature as manifested in the earliest law passed following the adoption of the constitution. *Id.* at 136–37, 341 N.W.2d at 675. In the present case, no constitutional debate on Art. IV, § 27 was recorded. Further, although the first statute passed following the adoption of the provision—sec. 775, Stats.—has survived essentially verbatim since its inception in 1850, it is not instructive as to the meaning of the words at issue here. Section 775.01 Stats., states, in relevant part, "[u]pon refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11(3) . . .." Thus, this statutory section assumes that the legislature has already denied the claim. This type of scenario is not present in the instant case. Consequently, an analysis of Art. IV, § 27 turns on the plain meaning of the words in the provision.

The specific language in Art. IV, § 27 which is in dispute is that part which provides "suits may be brought against the state." The SPD argues that this language is plain on its face and "must include any proceeding before a court where appearances are made by two adversary parties, one of whom is the state (or a state agency), these parties present conflicting claims

to the court, and the court resolves those claims in an enforceable order." Polk County, relying heavily on the court of appeals decision, counters that the plain meaning of the phrase supports its construction—namely, that Polk County did not bring a suit against the state; rather, as an aggrieved party, it simply challenged an adverse court ruling both at the circuit court level and at the court of appeals.

For the SPD to be successful in this case, it must prove three things: (1) Polk County's appeal is a "suit" (2) "brought against" (3) "the state." If the SPD can show that Polk County's appeal fulfills these three elements, the county is barred by sovereign immunity from recovering the expenses of the experts and must proceed via the statutory claims procedure set forth in secs. 16.007 and 775.01, Stats. *See P.G. Miron Const. Co., Inc.*, 181 Wis. 2d at 1053, 512 N.W.2d at 501.

In *P.G. Miron Const. Co., Inc.*, 181 Wis. 2d at 1053, 512 N.W.2d at 503, this court set forth the common definition of "suit":

> [A]ny proceeding by one person or persons against another or others in a court of law in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or equity.

We also recognized that "[t]his court has consistently used the term 'suit' in sovereign immunity cases as a reference to legal actions which seek resolution in a court of law." *Id.* In the present case, there is little dispute that Polk County's challenge of the circuit court order can be considered a "suit" under the definition of that term as set forth in *P.G. Miron Const. Co., Inc.* The intervention by Polk County at the circuit court level, as well as its subsequent appeal of an

adverse decision to the court of appeals, both fall within the broad purview of "legal actions which seek resolution in a court of law."

We turn next to the second element of Art. IV, § 27 at issue in the present case, i.e., whether the suit was "brought against" the state. BLACK'S LAW DICTIONARY 192 (6th ed. 1990) defines "bringing suit" as having "a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit." Here, Kucinski petitioned the circuit court for an order requesting that Polk County pay the witness fees of various defense experts "necessary for an adequate defense of Bruce Brenizer." Following the circuit court's decision to grant the petition *ex parte,* Polk County, in a defensive posture, filed a motion to intervene in the criminal action in an effort to protect its interests. Polk County sought reconsideration of the circuit court's order requiring it to pay the witness fees. By simply requesting intervention in the action it did not "bring" suit against the state. Rather, the county simply sought the ability to respond to the extent of the claim made by the SPD upon its financial resources. Further, following an adverse ruling, Polk County was entitled, as an aggrieved party, to have the order reviewed by an appellate court. *See Tierney v. Lacenski,* 114 Wis. 2d 298, 302, 338 N.W.2d 522, 524 (Ct. App. 1983). The court of appeals summarized the effect of these events cogently and succinctly:

> The county, in a defensive posture, is merely appealing a court order that, as an aggrieved party, it is entitled to appeal. We decline to characterize an appeal by an aggrieved party as a suit against the state. That the county will prevail on its appeal requiring the SPD to incur statutorily obligated lia-

bility does not convert this to a suit against the
state.

*Polk County,* 179 Wis. 2d at 317, 507 N.W.2d at 578.[4]
Our review of the entire proceeding leads us to con-
clude that Polk County did not bring suit against the
state as that phrase is construed under Art. IV, § 27 of
the Wisconsin Constitution.

The third element of Art. IV, § 27 requires that the
suit be brought against "the state." In *Lister,* 72 Wis. 2d
at 291, 240 N.W.2d at 617, this court considered, *inter
alia,* the issue of whether the Board of Regents of the
University of Wisconsin was an agent of the state for
purposes of sovereign immunity consideration. We ini-
tially recognized that "the state's immunity from suit
extends to its arms or agencies." *Id.* We then explained:

> Whether the defense of sovereign immunity may be
> asserted depends not so much upon the character of
> the parties defendant as it does upon the nature of
> the relief which is sought.
>
> When an action 'is in essence one for the recov-
> ery of money from a state, the state is the real
> substantial party in interest and is entitled to

---

[4] As alluded to earlier, the issue of whether the SPD is
legally responsible for the costs of the court-appointed defense
experts is not at issue in the present case. The SPD did not
appeal that part of the court of appeals decision concluding that
the SPD was required by law to pay for the court-appointed
defense experts. Thus, the pronouncement by the court of
appeals on this issue is the present law in Wisconsin. *See Polk
County,* 179 Wis. 2d at 318–20, 507 N.W.2d at 578–79.

Here, Polk County requested that the SPD pay *only* the
monies disbursed by the county for the expert witnesses
appointed on behalf of Brenizer. Consequently, Polk County
never requested that the SPD, as an agent of the state, pay out
any monies other than that which it was legally obligated to do.

invoke its sovereign immunity from suit even though individual officials are nominal defendants.'

*Id.* at 292, 240 N.W.2d at 617 (citation omitted).

In the present case, there is no dispute that the SPD is an "arm or agency" of the state. As noted by the SPD in its brief, it is an entity with no power to raise money or incur liability beyond the amount appropriated by the legislature. Further, Polk County, although acting defensively, is requesting that the SPD return the monies that the county was ordered to expend for payment of Brenizer's expert witness fees. Consequently, the SPD has proven that the third element of sovereign immunity is present in this case.

In conclusion, the doctrine of sovereign immunity does not preclude Polk County from appealing the circuit court's decision that the county was required to pay the costs associated with the appointment of several expert witnesses for the defense. Despite the SPD's assertions to the contrary, the order of the circuit court was not immune from attack based on the SPD's status as an agent of the state. Simply put, Polk County never "brought" suit against the state. Thus, a critical element of the sovereign immunity defense is absent. Although we recognize that the SPD, as an agent of the state, may, at the appropriate time, utilize sovereign immunity as a defense, the elements of the doctrine were not proven in this case.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree that the decision of the court of appeals should be affirmed. I conclude that when the sovereign sues, the

defendant may assert a recoupment defense. The defense must arise out of the same transaction or occurrence which is the subject matter of the government's action. The defendant may claim relief only to the extent of reducing or defeating the government's claim; the defendant may not obtain a judgment against the government which is affirmative in the sense of involving relief different in kind or nature from that sought by the government or in the sense of exceeding the amount of the government's claim. In other words, by presenting a claim, the state subjects itself to diminution of recovery by way of recoupment. This reasoning has been used in numerous federal and state courts. *See, e.g., Frederick v. United States,* 386 F.2d 481, 488 (5th Cir. 1967); *Ruppenthal v. State,* 849 P.2d 1316, 1321 (Wyo. 1993); *State v. Hogg,* 535 A.2d 923, 930 (Md. 1988), and cases cited therein. *See also* 6 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure: Civil* sec. 1427 at 197–200 (2d ed. 1990).