John A. Scocos, Plaintiff-Respondent,

v.

State of Wisconsin Department of
Veteran Affairs, Marvin J. Freedman,
Marcia M. Anderson, David F. Boetcher,
Jacqueline A. Guthrie, Rodney C. Moen, Peter J.
Moran and Daniel J. Naylor in their official
capacities as members of the Board of the
Department of Veterans Affairs,
Defendants-Appellants.

Court of Appeals

*No. 2011AP1178. Submitted on briefs May 10, 2012.
—Decided June 28, 2012.*

2012 WI App 81

(Also reported in 819 N.W.2d 360.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Steven C. Kilpatrick*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James R. Troupis* and *Sarah E. Troupis* of *Troupis Law Office, LLC*, Middleton.

A nonparty brief was filed by *Lester A. Pines* and *Theresa R. Gabriel* of *Cullen Weston Pines & Bach LLP*, Madison, for AMVETS.

Before Lundsten, P.J., Vergeront and Reilly, JJ.

¶ 1. LUNDSTEN, P.J. After John Scocos returned to state service in 2009 as the Secretary of the Wisconsin Department of Veterans Affairs, following his military service in Iraq, Scocos was removed by a vote of the Department of Veterans Affairs Board. Thereafter, Scocos sued the Department and board members, alleging violations of WIS. STAT. § 321.64(2)[1] and federal law. The State moved to dismiss claims based on § 321.64(2) and federal law, asserting sovereign immunity from such claims. The State argued that the legislature did not clearly and expressly waive the State's sovereign immunity with respect to § 321.64(2). The circuit court disagreed, and denied dismissal with respect to these claims. We affirm the circuit court.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

## Background

¶ 2. In September 2003, John Scocos was appointed Secretary of the Wisconsin Department of Veterans Affairs, a Wisconsin government agency. Scocos's status was that of an unclassified state employee. Scocos's distinguished military career includes service in the Army reserves from 1990 until 2009. During that time, he left state service to serve two tours of duty in Iraq. Relevant here, Scocos was deployed to Iraq from September 2008 to September 2009. After this deployment, he was restored to his position as Department Secretary. Approximately two months later, on November 24, 2009, Scocos was removed from his position by a vote of the Department of Veterans Affairs Board.

¶ 3. Scocos brought suit against the Department and board members (hereafter collectively the State) in circuit court, alleging a violation of state and federal law. More specifically, he alleged a violation of his right not to be discharged without cause, under Wis. Stat. § 321.64, and violations of his rights under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301, et seq. (hereafter USERRA).

¶ 4. The State moved to dismiss all counts. The circuit court issued an oral ruling granting dismissal of some claims, but denying dismissal of claims brought under Wis. Stat. § 321.64 and USERRA. A written order reflecting the court's ruling was entered May 9, 2011. The State petitioned for leave to appeal, challenging the denial of its request to dismiss these claims, and we granted that petition.[2]

---

[2] A veterans service organization, American Veterans (AMVETS), has submitted an amicus brief explaining the context and history of Wis. Stat. § 321.64.

## Discussion

¶ 5. WISCONSIN STAT. § 321.64 provides employees with certain employment restoration rights when they have been absent from employment because they enlisted or were inducted into military service.[3] Generally speaking, § 321.64(1) describes which employees are eligible to be restored to their former employment following such military service. Section 321.64(2) describes rights possessed by persons restored to employment under subsection (1). And, § 321.64(3) authorizes such employees to petition a circuit court to require compliance with subsections (1) and (2).[4] Scocos's

[3] In this opinion, we will refer to military service because that is the type of federal service at issue here. However, we note that WIS. STAT. § 321.64 uses the more general term "federal active duty."

[4] WISCONSIN STAT. § 321.64 reads, in full:

**321.64 Reemployment after completion of federal active duty or service. (1)**(a) Any person who has enlisted or enlists in or who has been or is inducted or ordered into federal active duty for 90 days or more, and any person whose services are requested by the federal government for national defense work as a civilian during a period officially proclaimed to be a national emergency or a limited national emergency, who, to perform the duty or service, has left or leaves a position, other than a temporary position, in the employ of any political subdivision of the state or in the employ of any private or other employer, shall be restored to that position or to a position of like seniority, status, pay, and salary advancement as though service toward seniority, status, pay, or salary advancement had not been interrupted by the absence, if all of the following conditions are met:

1. The person presents to the employer evidence of satisfactory completion of the period of federal active duty or federal government service, or of discharge from the U.S. armed forces under conditions other than dishonorable.

2. The person is still qualified to perform the duties of the position.

3. The person makes application for reemployment and resumes work within 90 days after completion of the federal active duty or federal government service, military or civilian, or was so discharged from the U.S. armed forces, or within 6 months after release from hospitalization for duty-connected or service-connected injury or disease.

4. The employer's circumstances have not changed as to make it impossible or unreasonable to restore the person.

5. The federal active duty or federal government service was not for more than 5 years unless extended by law.

(b) Except as provided in par. (c), in the event of any dispute relating to the provisions under par. (a), the person may file a complaint regarding the matter with the department of workforce development. The department of workforce development shall process any complaint made under this paragraph in the same manner as employment discrimination complaints are processed under s. 111.39.

(c) If a dispute arises regarding a classified employee of the state relating to the provisions of par. (a), the complaint shall be filed with the director of the office of state employment relations. A decision of the director of the office of state employment relations may be reviewed under ch. 227.

(2) The service of any person who is or was restored to a position in accordance with sub. (1) shall be considered not to be interrupted by the absence, except for the receipt of pay or other compensation for the period of the absence and he or she shall be entitled to participate in insurance, pensions, retirement plans, or other benefits offered by the employer under established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time the person entered or was enlisted, inducted, or ordered into federal active duty or federal government service. The person whose position was restored may not be discharged from the position without cause within one year after restoration and the discharge is subject to all federal or state laws affecting any private employment and to the provisions of contracts that may exist between employer and employee. Each political subdivision shall contribute or pay all contributions of the employer to the applicable and existent pension, annuity, or

653

federal . . . laws." Based on this latter language, Scocos brought claims alleging USERRA violations.

¶ 6. The dispute here arises because the State asserts that, unlike other employers covered by WIS. STAT. § 321.64, the State has sovereign immunity. As described in greater detail below, the State concedes that the legislature has, in § 321.64, waived immunity with respect to petitions to force compliance with subsection (1), but the State contends there is no such waiver with respect to Scocos's claims under subsection (2).

retirement system as though the service of the employee had not been interrupted by federal active duty or federal government service.

(3) If an employer fails or refuses to comply with subs. (1) and (2), a person entitled to the benefits under subs. (1) and (2) may petition the circuit court to require the employer to comply with those subsections. Upon the filing of the petition and on reasonable notice to the employer, the court may require the employer to comply with those subsections and to compensate the person for any loss of wages or benefits suffered by reason of the employer's action. The court shall order a speedy hearing and shall advance the case on the calendar. No fees or court costs may be taxed against a person petitioning the court under this subsection. The action commenced under this subsection against a private employer, and the trial or hearing of the action, shall be in any county in which the employment took place or in which the private employer maintains a place of business, and in all other cases shall be as provided in s. 801.50.

(4) No person who is appointed in the service of the state or of any political subdivision to fill the place of a person entering federal active duty or federal government service under sub. (1) shall acquire permanent tenure during the period of that replacement service.

(5) If the decision of the circuit court is appealed the person who petitioned the circuit court under sub. (3) need not file an appeal bond for the security for costs on the appeal.

(6) The restoration of classified employees of the state shall be governed by s. 230.32. The restoration of unclassified state employees shall be governed by this section.

654

¶ 7. The applicable law derives from Article IV, sec. 27 of the Wisconsin Constitution. That article provides: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." WIS. CONST. art. IV, § 27. The supreme court has explained that this language means "that the legislature has the exclusive right to consent to a suit against the state," *State v. P.G. Miron Const ruction Co.*, 181 Wis. 2d 1045, 1052, 512 N.W.2d 499 (1994), and that this legislative consent to suit "must be clear and express," *id.* at 1052–53. If the legislature does not clearly and expressly waive sovereign immunity, and if, as here, the defense of sovereign immunity is raised, the court has no personal jurisdiction over the State. *Lister v. Board of Regents*, 72 Wis. 2d 282, 291, 240 N.W.2d 610 (1976).

¶ 8. Thus, the question here is whether, in WIS. STAT. § 321.64, the legislature has clearly and expressly consented to suit against the State for a violation of § 321.64(2)'s discharge-for-cause provision and for violations under USERRA.

### A. Waiver Of Immunity For Suits Under WIS. STAT. § 321.64

¶ 9. It is undisputed that Scocos had a right to be restored to his unclassified state position following his return from military service. The State agrees that WIS. STAT. § 321.64(6) constitutes a legislative declaration that restoration rights under § 321.64(1) apply to unclassified state employees. The State also implicitly concedes that, if the State had violated Scocos's subsection (1) right to be restored to his former state position, Scocos could have brought suit under § 321.64(3) to compel the State to restore Scocos to his position.

¶ 10. The State contends, however, that the same is not true with respect to rights under WIS. STAT. § 321.64(2). According to the State, the legislature, in § 321.64, did not clearly and expressly waive the State's sovereign immunity from suit with respect to rights in subsection (2). Thus, according to the State, although Scocos could sue in circuit court to force the State, pursuant to subsection (1), to restore Scocos to his former unclassified state job, Scocos could not sue in circuit court for a violation of subsection (2)'s discharge-for-cause provision or sue based on a failure of the State to comply with federal law with respect to the discharge. We disagree.

¶ 11. The State's sovereign immunity argument hinges on its interpretation of WIS. STAT. § 321.64(6). Subsection (6) states, in part, that the "restoration of unclassified state employees shall be governed by this section." Although this seems to be a clear statement that the restoration rights conferred in all of § 321.64 apply to unclassified state employees, the State contends that the word "restoration" refers only to the requirement that employees be restored to their former position and that the only part of § 321.64 dealing with this limited view of "restoration" is subsection (1). In contrast, according to the State, subsection (2) deals with topics other than "restoration" because it deals with rights that apply after restoration.

¶ 12. Applying this interpretation here, the State asks us to read subsection (6) as explaining that unclassified state employees have the right to be restored to their unclassified positions under subsection (1), but such employees do not have the one-year discharge-for-cause protection conferred in subsection (2). We agree with Scocos and the circuit court that this is not a reasonable reading of the statute. Rather, language in

subsections (1), (2), and (6) clearly expresses that unclassified state employees are protected by subsection (2).

¶ 13. First, we agree with Scocos that the word "restoration" in subsection (6) clearly refers to restoration throughout Wis. Stat. § 321.64. That is, the term refers not only to who must be restored to state service under subsection (1), but also to restoration rights, including those specified in subsection (2).

¶ 14. Second, the structure of the statute shows that restoration rights under subsection (2) go hand in hand with being restored to state service under subsection (1). Subsection (2) unambiguously provides that persons who have been restored under subsection (1) have the restoration rights described in subsection (2). The first sentence of subsection (2) begins: "The service of *any person* who is or was restored to a position in accordance with sub. (1) shall . . . ." (Emphasis added.) The second sentence of subsection (2) begins: "The person whose position was restored may not be . . . ." Under this plain language, "any person" restored under subsection (1) has the rights described in subsection (2). Because the State concedes that Scocos is a person who was restored to his position under subsection (1), it follows from the statutory language that Scocos has the restoration rights contained in subsection (2).

¶ 15. The State does not address the subsection (2) language giving all persons restored under subsection (1) the rights described in subsection (2). Rather, the State makes other arguments that we address and reject below.

¶ 16. The State contends that its narrow interpretation of the word "restoration" in subsection (6) is supported by the administrative code. The State points to a portion of the code dealing with "Merit Recruit-

657

ment and Selection" of classified employees, Wis. Admin. Code § ER-MRS 1.02(30). The State writes: "In ch. ER-MRS 1 of the Wisconsin Administrative Code, governing civil service law, 'restoration' is defined as 'the act of mandatory reappointment without competition of an employee or former employee . . . .' " But the State's quote from the code is selective. The State omits the portion of the definition that goes on to specify that "restoration" means re-appointment "to a position" in specified *classes* of service relating to the employee's previous state employment. *Id.* That is, the full definition of "restoration" in ER-MRS reveals that the word, as used in that portion of the code, has a technical meaning that is solely applicable to the restoration rights of *classified* employees.

¶ 17. The State next argues that its interpretation is supported by subsection (6)'s reference to Wis. Stat. § 230.32. The State is referring to the first sentence of subsection (6), which reads: "The restoration of *classified* employees of the state shall be governed by s. 230.32." (Emphasis added.) Since subsection (1) of § 230.32, according to the State, "only concerns job restoration," it follows that "restoration" in subsection (6) has the same limited meaning. This argument is circular. That is, the argument presupposes that "restoration" under § 230.32 has the limited meaning the State asks us to give it in § 321.64.

¶ 18. The State next argues that the other subsections of Wis. Stat. § 321.64 reveal no clear legislative intent that the State be subject to suit for enforcement of rights under subsection (2). To the extent the State is referring to subsection (2) itself, we have already explained why that subsection plainly supports Scocos's interpretation. To the extent the State is referring to other subsections, those subsections do not matter

658

because the legislature's intent is clear from a plain language reading of subsections (1), (2), and (6); that intent does not need to be made more clear in any other subsections.

¶ 19. The State contends that a comparison of WIS. STAT. § 321.64 with WIS. STAT. § 321.65 "illustrates that [§ 321.64] contains no clear and express waiver of the State's sovereign immunity." The State's focus here is on the term "employer." The State finds it significant that in § 321.65 the legislature expressly defined "employer" to include "the state" and any entity created by the state constitution or state laws. WIS. STAT. § 321.65(1)(b). This argument assumes that the only way to be clear is to include a definition of "employer" that includes reference to the State. However, the State's admission that the word "employer" in subsection (1) encompasses the State demonstrates the error in this logic because the legislature accomplished this without defining "employer" for purposes of § 321.64. Stated differently, the State's own interpretation of § 321.64 shows that there are ways to clearly include the State within the meaning of employer without defining employer to include the State.

¶ 20. We find similarly unpersuasive the State's reliance on examples of the waiver of sovereign immunity found in case law.[5] These cases provide examples of ways in which the legislature has or has not expressed its clear intent to waive sovereign immunity. But the cases do not support the State's assertion that "the

[5] The State cites *German v. DOT*, 2000 WI 62, 235 Wis. 2d 576, 612 N.W.2d 50; *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 280 N.W.2d 757 (1979); *State ex rel. DPI v. DILHR*, 68 Wis. 2d 677, 229 N.W.2d 591 (1975); and *Butzlaff v. DHFS*, 223 Wis. 2d 673, 590 N.W.2d 9 (Ct. App. 1998).

complete lack of a definition of 'employer' in WIS. STAT. § 321.64 sinks Scocos' argument that the Legislature has made a clear and express waiver of sovereign immunity." None of the cases contain a rule limiting how the legislature may make itself clear.

¶ 21. Finally, the State argues that "statutory background" reveals that the legislature did not waive the State's sovereign immunity. However, because we have already concluded that the legislature's intent is revealed in plain language, we need not look to "statutory background." Additionally, we note that this argument seemingly conflicts with the State's assertion that, when express authorization for a suit against it cannot be found in a statute, the analysis stops and sovereign immunity applies. In this respect, the State, relying on *P.G. Miron Construction Co.*, 181 Wis. 2d at 1052–53, and *Lister*, 72 Wis. 2d at 294, contends that the "normal" rules of statutory construction do not apply to the waiver of sovereign immunity. But when the State asks us to consider "statutory background," it cites the seminal case explaining the *normal* rules of statutory construction, *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. We do not attempt to resolve this apparent conflict in the State's argument.

¶ 22. In sum, the plain language of subsections (1), (2), and (6) of WIS. STAT. § 321.64 reveals clear and express consent to a suit against the State for a violation of subsection (2).

*B. Waiver Of Immunity For Suits Under USERRA*

¶ 23. WISCONSIN STAT. § 321.64(2) provides that the discharge of persons restored to state employment under § 321.64(1) is "subject to all federal . . . laws

660

affecting any private employment." Once more, we think the disputed language is plain on its face and means what it says, "all federal . . . laws," and, therefore, it includes USERRA. The State does not dispute that, if this reference to "all federal . . . laws" plainly includes USERRA, the circuit court properly rejected the State's motion to dismiss Scocos's USERRA claims. Accordingly, we turn our attention to the State's contention that this language is not an express waiver of sovereign immunity from suits under USERRA.[6]

¶ 24. The State's primary argument is that subsection (2) does not expressly mention USERRA. In the State's view, the absence of an express reference to this specific federal law is fatal because it leaves a reader unsure whether our legislature meant to include all federal laws and, in particular, USERRA. We disagree. The language the legislature chose to use is clear and express: "all federal . . . laws." The fact that this language is broad does not make it unclear.

¶ 25. In a similar vein, the State argues that subsection (2) does not expressly and clearly cover the *current* version of USERRA that was, according to the State, enacted decades after the predecessor statute to WIS. STAT. § 321.64 was enacted in 1941. According to the State, "[i]t simply strains one's belief that the Legislature, through a bland reference to 'all federal . . . laws,' waived the State's sovereign immunity from suit

---

[6] The State devotes a large portion of its brief-in-chief to the question whether Congress has abrogated the State's sovereign immunity from suit brought by a private party, such as Scocos, under USERRA. Scocos, as the State points out, does not dispute the State's argument in this respect. However, because we agree with Scocos and the circuit court that the Wisconsin legislature has waived immunity to suit under USERRA, we need not address this issue.

661

to all federal laws *yet to be enacted.*" However, what the State characterizes as a "bland reference" is nothing of the sort. Rather "all federal . . . laws" is broad, all-encompassing language that the legislature would not lightly employ.

¶ 26. As we understand the State's position and its logical extension with respect to unclassified state employees, coverage under subsection (2), at most, is limited to permitting suit under federal laws that remain unchanged since 1941, when the predecessor to WIS. STAT. § 321.64 was enacted. We conclude that the opposite is true. That is, if our legislature meant to limit coverage to federal laws as they existed in 1941, it would have used such language and not the broad "all federal . . . laws" language.

¶ 27. Accordingly, we agree with Scocos and the circuit court that WIS. STAT. § 321.64 authorizes Scocos's claims against the State under USERRA.

### *Conclusion*

¶ 28. For the reasons stated, we affirm the circuit court's decision denying the State's motion to dismiss claims brought under WIS. STAT. § 321.64 and USERRA.

*By the Court.*—Order affirmed and cause remanded.