CLEANSOILS WISCONSIN, INC., Plaintiff-Respondent,

v.

STATE of Wisconsin DEPARTMENT OF TRANSPORTATION
and State of Wisconsin Department of Commerce,
Defendants-Appellants,

JAMES PETERSON SONS, INC., Employers Insurance of
Wausau and Harold Bean, Defendants-Respondents,

CENTRAL WISCONSIN ENGINEERS AND ARCHITECTS, and
Fireman's Fund Insurance Company, Defendants.

Court of Appeals

*No. 98–3374. Submitted on briefs July 6, 1999.—Decided July
27, 1999.*

(Also reported in 599 N.W.2d 903.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Kathleen M. Ptacek*, assistant attorney general of Madison.

On behalf of the defendants-respondents, James Peterson Sons, Inc., and Employers Insurance of Wausau, the cause was submitted on the brief of *Brian W. Mullins* and *Carl A. Sinderbrand* of *Wickwire Gavin, P.C.* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Hugh R. Braun* and *Jeffrey L. Janik* of *Godfrey, Braun & Frazier* of Milwaukee.

Before Cane, C.J., Myse, P.J., and Wedemeyer, J.

CANE, C.J. The State Department of Transportation (DOT) and the State Department of Commerce (DOC) appeal from the circuit court's order holding that the State had consented to suit, therefore denying the State's motion to dismiss for lack of personal jurisdiction based on the sovereign immunity of the State and its agencies.[1] This appeal presents three issues: (1) whether legislative adjournment constitutes a refusal of claim, thereby mandating a finding that CleanSoils Wisconsin, Inc. (CleanSoils) had satisfied the statutory conditions precedent for bringing suit against the State; (2) whether cross-claimants[2] must satisfy the

---

[1] This is an interlocutory appeal. The petition for leave to appeal was granted December 17, 1998, and on our own motion we accelerated this appeal.

[2] Cross-claimants here are James Peterson Sons., Inc., Employers Insurance of Wausau and Harold Bean.

conditions precedent for bringing suit against the State where they are asserting a claim for indemnification, arising out of CleanSoils' claims, rather than an independent claim; and (3) whether, assuming the conditions precedent have been satisfied, the State consented to suit based on either unjust enrichment or breach of contract.

Because legislative adjournment constitutes refusal of CleanSoils' claim, which had been properly filed with the claims board and brought before the legislature, CleanSoils satisfied the conditions precedent for bringing suit against the State. Further, because cross-claimants failed to comply with the statutory conditions precedent, their derivative claims against the State are dismissed. Finally, the State has consented to suit by CleanSoils, as a third-party beneficiary, based on breach of contract, but not, however, on the theory of unjust enrichment.

## I. BACKGROUND

In its opinion denying the State's motion to dismiss, the trial court found that in 1995, the Department of Transportation (DOT) planned a highway improvement project on Highway 97 near Edgar, Wisconsin. As part of its plan, the DOT identified a parcel of land, owned by Harold and Audrey Bean (Bean), that was necessary for an intersection improvement. Consequently, the DOT entered into a purchase agreement with Bean. Shortly thereafter, it was discovered that the parcel was contaminated with petroleum from a leaking underground storage tank.

To begin a remediation project on the land, Bean retained Central Wisconsin Engineers and Architects (CWE), a state consultant, as environmental engineers for the cleanup. CWE invited CleanSoils, a business

that engages in the thermal remediation of petroleum contaminated soil, to bid on the remediation project. This invitation to bid stated that it was DOT's intention to undertake a remediation project.

After CleanSoils' bid was accepted, Bean had difficulty securing funding for the remediation project and consequently applied for funding under the Petroleum Environmental Cleanup Fund Act (PECFA), an Act creating a State fund managed by the Department of Commerce (DOC) to reimburse owners who remediate contaminated land. Anxious to begin the road improvements, the DOT arranged to serve as Bean's agent for the cleanup, financing and managing the cleanup process and thereafter receiving reimbursement under PECFA for the cleanup costs.

During this time, James Peterson Sons, Inc. (Peterson), was a state contractor working on an unrelated highway project near the contaminated site. In order to avoid a lengthy bidding process and expedite the remediation project, the DOT asked Peterson to serve as contractor for the remediation and issued a change order directing Peterson to hire CleanSoils as the subcontractor. Although Peterson was technically the contractor for the remediation, Peterson was not involved in the actual cleanup. As the subcontractor, CleanSoils' work was directed and supervised by CWE and the DOT.

As the cleanup progressed, CleanSoils discovered that the contamination affected far more land than the original contract allowed. CleanSoils consequently requested a change order to complete the project and remediate the additional soil. Believing CWE to be acting as the DOT's agent, CleanSoils obtained approval for the change order from CWE. After the work was completed, however, the DOT disputed the approval of

the additional work and argued that CleanSoils had not adequately performed the remediation. The DOT thereafter severed all relations with CleanSoils and contracted elsewhere for completion of the remediation project.

Peterson, relying on a "pay when paid" provision of its contract with CleanSoils, declined to pay CleanSoils because Peterson had not been paid by the DOT. Clean-Soils consequently filed suit against the various parties, excluding the DOT and DOC and, pursuant to § 16.007, STATS., filed a claim against the DOT with the claims board. After denial of its claim by the claims board, CleanSoils arranged for 1997 Senate Bill No. 442, authorizing payment to CleanSoils, to be introduced in the legislature. The legislature, however, never acted on the bill before its March 26, 1998 adjournment. CleanSoils thereafter amended its complaint to include its claim against the DOT and DOC. Subsequently, Peterson, Bean and Employers Insurance of Wausau filed a cross-claim against the State for indemnification of the amounts sought by CleanSoils.

The circuit court, holding that the State had waived its sovereign immunity and consented to suit under the theories of unjust enrichment and breach of implied contract, denied the State's motion to dismiss.

## II. ANALYSIS

■ Where the underlying facts are essentially undisputed, an appeal of an order denying a motion to dismiss for lack of personal jurisdiction based on sovereign immunity is a question of law that we will review without deference to the trial court. *See Elliott v. Donahue*, 169 Wis. 2d 310, 316, 485 N.W.2d 403, 405 (1992).

## A. CLEANSOILS AND THE STATUTORY CONDITIONS PRECEDENT

Article IV, § 27, of the Wisconsin Constitution, also known as the sovereign immunity clause, states: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." *State v. P.G. Miron Constr. Co.*, 181 Wis. 2d 1045, 1052, 512 N.W.2d 499, 503 (1994). The *Miron* court noted that "[t]his language has been construed repeatedly to mean that the legislature has the exclusive right to consent to a suit against the state." *Id.* The *Miron* court further recognized that, "the state has 'consented' to suit with the establishment of a specific claims procedure," under §§ 16.007[3] and 775.01,[4] STATS. *Id.* at 1053, 512 N.W.2d at 503. Under § 16.007:

---

[3] Section 16.007, STATS., provides in pertinent part:

**Claims Board. (1)** PURPOSE. The claims board shall receive, investigate and make recommendations on all claims of $10 or more presented against the state which are referred to the board by the department. No claim or bill relating to such a claim shall be considered by the legislature until a recommendation thereon has been made by the claims board.

. . . .

**(3)** PROCEDURE. When a claim has been referred to the claims board, the board may upon its own motion and shall upon request of the claimant, schedule such claim for hearing.

. . . .

**(5)** FINDINGS. The board shall report its findings and recommendations, on all claims referred to it, to the legislature.

[4] Section 775.01, STATS., states the following:

**Actions against state; bond.** Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11(3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all

[A] party may present a claim to the state claims board, which first holds a hearing and then makes a recommendation to the legislature to grant or deny the claim. If the legislature refuses to allow a claim against the state, the claimant may then, under sec. 775.01, bring an action against the state.

*Miron*, 181 Wis. 2d at 1053, 512 N.W.2d at 503. In the instant case, CleanSoils presented a claim for damages against the DOT to the Department of Administration Claims Board. On October 30, 1997, the claims board denied CleanSoils' claim. Consequently, CleanSoils caused 1997 Senate Bill No. 442 to be introduced to the legislature; however, the legislature concluded its biennial session on March 26, 1998, without having acted upon the bill. As such, Senate Bill No. 442 was recorded as "[f]ailed to pass pursuant to Senate Joint Resolution 1."

The State argues that CleanSoils failed to satisfy the conditions precedent for bringing suit against the State in that it "never obtained legislative refusal of its claim." The State, relying on *Boldt v. State*, 101 Wis. 2d 566, 305 N.W.2d 133 (1981), asserts that a claimant must cause the legislature to perform an act of refusal.[5] We reject the State's contention. Under the JOINT RULES OF THE WISCONSIN LEGISLATURE as last

costs, in case the claimant fails to obtain judgment against the state.

[5] The *Boldt* court emphasized that when a claimant seeks to bring suit against the State, "[t]he order of remedies sought by the petitioner is required by statutes." *Boldt v. State*, 101 Wis. 2d 566, 580, 305 N.W.2d 133, 141 (1981). The court merely reiterated the language found in §§ 16.007 and 775.01, STATS., without discussing what constitutes "the refusal of the legislature to allow a claim."

amended January 28, 1997, JOINT RULE 83(4)(a) provides:

> At the conclusion of the last general-business floorperiod scheduled for the spring of the even numbered year, any bill or joint resolution not yet agreed to by both houses, and any resolution not yet passed by the house of origin, shall be deemed adversely disposed of for the biennial session and recorded as "failed to pass."

Under the legislature's own rules, adjournment is tantamount to refusal of claim, as a bill not acted upon at the conclusion of the legislature's last general-business floorperiod is deemed adversely disposed of. Further, in its petition for leave to appeal, the State described CleanSoils' procedural compliance, noting that "the Legislature refused to act on a bill which would have allowed such claim, thus effectively denying it." For the reasons noted, the State's contention that CleanSoils failed to satisfy the statutory conditions precedent to bringing suit against the State fails.

## B. CROSS-CLAIMANTS AND THE STATUTORY CONDITIONS PRECEDENT

The State, relying on *Sehlin v. State*, 256 Wis. 495, 41 N.W.2d 596 (1950), argues that the claims of the cross-claiming defendants must be dismissed for failure to comply with the statutory conditions precedent.[6] In *Sehlin,* the plaintiffs sought to recover as assignees of the original contracting party; however, they were found to have mischaracterized the bases for their claim. *Id.* at 501, 41 N.W.2d at 598. The *Sehlin* court

---

[6] The trial court failed to specifically address the State's motion to dismiss against the cross-claimants, focusing instead on the motion to dismiss against CleanSoils.

indicated that, in filing as assignees, the plaintiffs denied the legislature the opportunity to pass upon the question of whether the plaintiffs were rightful owners of the claim by operation of law, as successors to the original partners; therefore, the court found that the plaintiffs' claim, upon that basis, was not denied by the legislature and the statutory conditions precedent to the State's consent to suit were not complied with. *Id.* The court added:

> [I]t has been held that a notice filed by a husband claiming damages for injuries to his wife cannot be used to sustain an action by the wife; or a notice filed on behalf of an infant for injuries sustained by him cannot support an action by the infant's father for his own claim. One reason given for this view is that it is important that the municipal corporation know who has, or claims to have, a right of recovery of damages against it, since it might decline to recognize such a right on the part of the one who files a notice, on the ground that he had no claim in fact, *while as to another for the same wrong a claim might be allowed as just.*

*Id.* at 500, 41 N.W.2d at 598 (emphasis added) (quoting 38 AM. JUR. *Municipal Corporations* § 685 at 391). The court consequently found that the plaintiffs had not complied with the statutory conditions precedent. *Id.* The facts in *Sehlin* are not necessarily analogous to the instant facts; however, in *Sehlin*, the plaintiffs at least filed with the claims board, though as assignees. In the instant case, the cross-claimants have not even done that.

■

Although cross-claimants assert that their claims are purely derivative of CleanSoils' claims, the *Sehlin* court indicated that, even where the underlying claim

609

is the same, the legislature must be given the requisite notice of identity of parties in determining whether it will or will not disallow claims against the State. *Id.* Consequently, the cross-claimants' failure to comply with the statutory conditions precedent bars their claim against the State. Although the State further argues that the cross-claimants' claim for indemnification is barred by sovereign immunity,[7] we need not discuss their alternative arguments. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issues need be addressed).

## C. CONSENT TO SUIT

Although the State effectively consents to suit via the procedural statutory conditions precedent described above, these procedural statutes have "been interpreted as giving the state's consent to suit in some causes of action but not in others." *Boldt*, 101 Wis. 2d at 572, 305 N.W.2d at 138. The *Boldt* court noted that "[a]s for statutory consent by the state to suit in tort, this court has found none. Sec. 285.01, Stats. [now

---

[7] We note that on May 7, 1999, Peterson and Employers Insurance of Wausau (Peterson), filed a motion with this Court seeking an order to strike a portion of the appellant's reply brief or, in the alternative, for leave to file a supplemental brief. Peterson's motion was based on its contention that the State, in its reply brief, argued for the first time that it was immune from suit based on equitable principles. However, Peterson, in its respondent's brief and CleanSoils in its respondent's brief (quoting *Hicks v. Milwaukee County*, 71 Wis. 2d 401, 404, 238 N.W.2d 509, 512 (1976)), argued that the State is not immune from suit if the claim renders the State a debtor, even though the action is governed by "equitable principles." As such, the State is privileged, in its reply brief, to respond to the contentions raised by Peterson and CleanSoils. The motion is therefore denied.

610

775.01, STATS.], has been interpreted as limited to claims which if valid would render the state a debtor to the claimant." *Id.* (citing *Cords v. State*, 62 Wis. 2d 42, 50, 214 N.W.2d 405, 410 (1974)). Debt is "that for which an action of debt or *indebitatus assumpsit* will lie; and includes a sum of money due upon a contract, implied in law." *Trempealeau County v. State*, 260 Wis. 602, 605, 51 N.W.2d 499, 501 (1952). The State cannot dispute that CleanSoils' third-party claim, "if valid," would render the State a debtor to CleanSoils. It argues, however, that it has not consented to suit based on breach of contract because it has no debtor relationship with CleanSoils as a result of the alleged breach of contract between the DOT and Peterson.

In *Estate of Plautz v. Time Ins. Co.*, 189 Wis. 2d 136, 146, 525 N.W.2d 342, 346–47 (Ct. App. 1994), we held that

> although a contract cannot be enforced by a person not a party to it, an exception exists where the contract was specifically made for the benefit of a third party. . . . Thus a third party can recover upon a contract when the contract indicates an intention to secure a benefit to that party.

Under the instant facts, in order to facilitate remediation of the contaminated soil, the DOT asked Peterson to serve as contractor for the remediation and issued a change order directing Peterson to hire CleanSoils as the subcontractor. The change order between the DOT and Peterson benefited not only the DOT, but CleanSoils as well, in that CleanSoils was spared from having to engage in a competitive bidding process and was automatically offered the Bean remediation job. Additionally, CleanSoils was to perform the remediation work while Peterson was to serve only as a

611

medium for payment from the DOT to CleanSoils. Peterson in its change order with the DOT was no more than a conduit through which the DOT and CleanSoils contracted for the remediation project. As such, we hold that the State consented to suit by CleanSoils, as third-party beneficiary to the contract between the DOT and Peterson.

The State further argues that it did not consent to suit based on the theory of unjust enrichment, asserting that a cause of action for unjust enrichment may not be maintained against the State when it does not involve an issue of money had and received. We agree. As noted, the State consents to suit only where a petitioner's claims, if valid, "would render the state a debtor to the claimant." *Boldt*, 101 Wis. 2d at 572, 305 N.W.2d at 138 (citing *Cords*, 62 Wis. 2d at 50, 214 N.W.2d at 410). As noted in *Trempealeau*, a case relied upon by CleanSoils:

> In its strict, technical and legal sense a "debt" is that for which an action of debt or *indebitatus assumpsit* will lie; and includes a sum of money due upon a contract, implied in law . . . *it does not include claims sounding in tort . . . nor those forming the basis for a cause of action in equity.*

*Id.* at 605, 51 N.W.2d at 501 (emphasis added). Unjust enrichment is an equitable doctrine. *See Spensley Feeds, Inc. v. Livingston Feed & Lumber, Inc.*, 128 Wis. 2d 279, 288, 381 N.W.2d 601, 605 (Ct. App. 1985). In *Boldt*, however, the court, describing the nature of an action for money had and received, noted:

> In an action for money had and received on a theory of *quasi*-contract, recovery is allowed where the defendant has received a benefit from the plaintiff and the retention of such benefit by the

defendant would be inequitable. The law implies a promise of repayment when no rule of public policy or good morals has been violated. *The action is one at law, although governed by equitable principles.* . . . The focus in unjust enrichment cases is on the benefit received from the plaintiff by the defendant which, in good conscience, should not be retained.

*Id.* at 573, 305 N.W.2d at 138 (emphasis added) (citing *Hicks v. Milwaukee County*, 71 Wis. 2d 401, 404–05, 238 N.W.2d 509, 512 (1976)).

The *Boldt* court intimated that a claim based on unjust enrichment where money has been had and received is an action at law, "although governed by equitable principles." *Id.* at 573, 305 N.W.2d at 138 (citing *Hicks*, 71 Wis. 2d at 404, 238 N.W.2d at 512); *see also Trempealeau*, 260 Wis. at 605, 51 N.W.2d at 500. Further, although *Hicks, Boldt* and *Trempealeau* discuss the availability of recovery where the defendant has received a *"benefit,"* as opposed to ".money," these three cases did, in fact, involve money had and received. It follows, therefore, that where no money is had and received, the assertion of a claim based solely on unjust enrichment remains categorized as an equitable doctrine, for which the State does not consent to suit. We therefore hold that the State has not consented to suit based on the theory of unjust enrichment where no money is had and received.[8]

---

[8] CleanSoils and Peterson additionally rely on *Rosenbluth v. State*, 222 Wis. 623, 269 N.W. 292 (1936), and *Retelle v. State*, 198 Wis. 393, 223 N.W. 840 (1929), for their contention that a claim for unjust enrichment may be sustained where there has been no "money had and received" by the State. In *Rosenbluth*, however, the issue decided by the court was merely as to the amount the State was to pay for men and machinery, sought at

## III. CONCLUSION

We conclude that CleanSoils is not barred from suit against the State for any failure to comply with statutorily mandated procedural conditions precedent. On the contrary, legislative adjournment, before action on CleanSoils' proposed bill, was tantamount to "refusal of claim," as the legislature's own rules recognize that a bill not acted upon at the conclusion of the legislature's last general-business floorperiod is deemed adversely disposed of. We further conclude that the cross-claimants, having failed to comply with

the behest of a state forest ranger, to fight fires. There was no dispute nor discussion as to the availability of suit against the State based on the theory of unjust enrichment. Similarly, in *Retelle*, plaintiff's claim against the State was based on quantum meruit, which is distinguished from a claim for unjust enrichment. The Wisconsin Supreme Court has recognized that "[t]he common law action for quantum meruit, like all common law quasi-contractual claims, was founded upon the principle of unjust enrichment." *Ramsey v. Ellis*, 168 Wis. 2d 779, 785, 484 N.W.2d 331, 333 (1992). The *Ramsey* court further noted, however, that:

> [Q]uantum meruit is a distinct cause of action from an action for unjust enrichment, with distinct elements and a distinct measure of damages. While recovery for unjust enrichment is based upon the inequity of allowing the defendant to retain a benefit without paying for it, recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered. No contract is implied in an action for unjust enrichment.

*Id.*

Although CleanSoils, at times in its brief, used the terms "unjust enrichment," "quasi contract" and "implied contract" interchangeably, its argument focuses on its contention that it may bring suit against the State under the theory of unjust enrichment even where no money was had and received.

the statutory conditions precedent, are barred from suit against the State. Finally, the State has consented to suit by CleanSoils, as third-party beneficiary, based on breach of contract as the change order from the DOT to Peterson indicated an intention to secure a benefit to CleanSoils. The State did not, however, consent to suit based on the equitable doctrine of unjust enrichment where, as here, there was no money had and received. As such, the trial court was correct in denying the State's motion to dismiss for lack of personal jurisdiction based on the sovereign immunity of the state.

*By the Court.*—Order affirmed.