Irene D. Brown, Plaintiff-Appellant,†

v.

State of Wisconsin and Department of Revenue,
Defendant-Respondent.

Court of Appeals

*No. 98–2662. Submitted on briefs June 4, 1999.—Decided
September 2, 1999.*

(Also reported in 602 N.W.2d 79.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Thomas L. Frenn* and *Mark E. Sostarich* of *Petrie & Stocking S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Kathleen M. Ptacek*, assistant attorney general.

Before Dykman, P.J., Vergeront and Deininger, JJ.

VERGERONT, J.  Irene Brown has sued the State of Wisconsin and the Department of Revenue

357

(DOR) for misrepresentation, breach of contract and declaratory judgment arising out of her purchase of a Wisconsin's Very Own Megabucks (WVOM) winning ticket. The trial court granted the defendants' motion to dismiss, concluding the State has not consented to suit on the misrepresentation claim; specific performance of a contract is not available against the State; and the declaratory relief sought was related to the contract claim. On Brown's appeal of the order of dismissal, we decide: (1) the misrepresentation claim is barred by sovereign immunity; (2) the breach of contract claim is not barred by sovereign immunity insofar as it seeks damages for the breach; but (3) the complaint does not state a claim for breach of contract; and (4) the claim for declaratory relief is barred by sovereign immunity. We therefore affirm.

## BACKGROUND

*Allegations of Complaint*[1]

Brown's complaint alleges she purchased the winning WVOM ticket for the March 9, 1996 drawing. The jackpot prize for that drawing was the minimum jackpot in the amount of $1,000,000. She had purchased other WVOM tickets numerous times between late 1994 and March 1996. Prior to purchasing her first WVOM ticket, she learned from a videotape and the back of the play slip used for on-line games that the jackpot prize was "pari-mutuel and paid in 25 installments." She interpreted this phrase to mean twenty-five monthly installments. The back side of the on-line

---

[1] Because we are reviewing the disposition of a motion to dismiss, we summarize the allegations of the complaint, taking them as true for purposes of this appeal.

ticket she purchased also stated that the "jackpot is parimutuel and paid in 25 installments." She first learned that the prize would be paid to her over twenty-five years when her representative, by telephone, notified the Lottery Division of the DOR (the Division) that she claimed the prize. Since she is in her late sixties, had she known this before she purchased a ticket, she would not have purchased a ticket.

The first material Brown read stating that the WVOM jackpot is paid by annuity over twenty-five years was in the "On-Line Game Guide," which she obtained from a dispenser rack at the lottery office when she arrived to validate her winning ticket. This guide was not provided to her or made available to her at the lottery retail location where she had obtained the videotape, seen the back of the pay slips and purchased her tickets. The only other informational material that contains the language that the WVOM installments are paid over twenty-five years is in a formal DOR document, entitled "Features and Procedures," on file at the Division's offices and not referenced in any printed or broadcasted lottery informational material made available to the public through the marketing campaign, or available at the retail locations. No WVOM posters or retail point-of-purchase displays state the number of years over which the jackpot prize will be made. Although Brown listened to and watched various television and radio spots advertising the WVOM during the time she was purchasing tickets, none stated it would be paid over twenty-five years.

Brown's request for payment of the prize in monthly rather than annual installments was denied by the Division administrator, as was her claim for damages filed with the Wisconsin Claims Board under

§ 16.007, STATS. Payment of her prize was divided into twenty-five unequal checks, and she received the first, in the amount of $16,266.26 after state and federal withholding, on December 23, 1996.

Brown filed her complaint on July 11, 1997, naming the State and DOR as defendants.[2] She asserted a claim for breach of contract, requesting either $927,232.46—the monetary loss to her based on a present value methodology—or specific performance of the contract by payment of twenty-five monthly installments. She requested the same alternative relief for a claim of misrepresentation, and she requested a declaratory judgment that the State violated § 565.30(2m), STATS.,[3] by failing to state the number of years over which the WVOM prize would be paid on each and every piece of informational material produced and distributed by the State.[4]

---

[2] We will refer to both defendants in this opinion as the State, unless it is necessary to distinguish them.

[3] Section 565.30(2m), STATS., provides as follows:

> (2m) PRIZES OVER YEARS. If the prize for a winning lottery ticket or lottery share is monetary and is payable in instalments over a period of years, any informational material about the lottery must state the number of years over which the prize shall be paid.

[4] Brown also requested, in a fourth cause of action, a declaratory ruling that she may deposit the first check she received from the State on December 23, 1996, and the second check she received on June 25, 1997, without waiving or prejudicing her right to bring this action. She moved the court for an order to this effect, and the court granted the motion, allowing her to cash her prize payouts and use the money without prejudicing any of her claims in this action. The State did not file a cross-appeal, but nevertheless argues in its responsive brief that sovereign immunity barred this relief. The State relies on authority holding that a cross-appeal is not necessary when the error complained of, if corrected, would sustain the judgment or order

*Procedure in Trial Court*

The State moved to dismiss the complaint for: (1) lack of personal jurisdiction based on the State's sovereign immunity, in part because Brown did not have a bill presented to and denied by the legislature which, the State argued, is a precedent condition in § 775.01, STATS.;[5] (2) failure to state a claim for relief for declara-

that the appellant appeals. *See Lord v. Hubbell, Inc.*, 210 Wis. 2d, 150, 563 N.W.2d 913 (Ct. App. 1997). Brown filed a motion requesting that we strike this portion of the State's brief because no cross-appeal was filed. We deny the motion, consider the briefs on this point and conclude that we do not have jurisdiction to decide this issue. Brown's appeal of the trial court's final order brings before us only those prior non-final orders, judgments and rulings adverse to Brown and favorable to the State, *see* § 809.10(4), STATS., and those rulings that, if corrected, would sustain the trial court's judgment. *See State v. Alles*, 106 Wis. 2d 368, 388–89, 316 N.W.2d 378, 389 (1982); *Auric v. Continental Cas. Co.*, 111 Wis. 2d 507, 515–16, 331 N.W.2d 325, 330 (1983). *Lord* is inapplicable because correcting the error that the State complains of—permitting Brown to cash the checks without prejudicing her other claims—will not result in sustaining the trial court's final order dismissing the first three causes of action. We also observe that, since the State did not request a stay or interlocutory review of the court's order, the issues based on that order appear to be moot: Brown has presumably already cashed the checks.

[5] Section 775.01, STATS., provides:

> **Actions against state; bond.** Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11 (3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state.

tory judgment; and (3) failure to state a claim for relief for breach of contract. In Brown's memorandum opposing the motion, she argued, among other points, that § 775.01 did not require her to file a claim with the legislature. After the court entered an order asking the parties to further brief the issue of sovereign immunity as it relates to §§ 16.007 and 775.01, STATS., Brown responded with a memorandum further explaining her position that she was not required by § 775.01 to have a bill drafted, presented to the legislature and rejected. She also stated in the memorandum that, on January 13, 1998, at her request State Representative Marc Duff had introduced a bill to pay her claim and had advised her, through counsel, that the bill was referred to the Joint Committee on Finance where he expected no action to be taken during the session, which was to end on or about March 26, 1998. Copies of the bill and letter from Representative Duff were attached. Brown asked in her memorandum that the court allow her to replead after March 26, 1998, if the court were ultimately to agree with the State that this procedure was necessary. By letter dated March 30, 1998, Brown's counsel informed the court, with a copy to opposing counsel, that the legislative session had ended on March 26, 1998, without the legislature taking any action on her bill, thus denying her claim for relief. Brown contended in the letter that this constituted compliance with the requirements asserted by the State.

The court entered a written decision on the motion to dismiss. It concluded that because of Brown's compliance with the statutory procedure, both with the claims board and the legislature, the claim of sovereign immunity on this ground was moot. However, the court decided it had no personal jurisdiction over the State

362

on the misrepresentation claim because it was a tort, and that the remedy of specific performance for the contract claim was not available in a suit against the State. The court considered the alternative damage remedy to be the same as the equitable remedy of specific performance, because it was based on the present value of the money Brown alleged should be paid under her interpretation of the contract. For this reason, the court dismissed the breach of contract claim. Finally, the court dismissed the claim for declaratory relief because the requested declaration that the State violated § 565.30(2m), STATS., was solely for the purpose of advancing Brown's breach of contract claim.

## DISCUSSION

*Sovereign Immunity—Misrepresentation Claim*

■

Sovereign immunity derives from Article IV, Section 27 of the Wisconsin Constitution, which provides, "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Consent to suit must be expressly granted by the legislature. *State v. P.G. Miron Constr. Co.*, 181 Wis. 2d 1045, 1052–53, 512 N.W.2d 499, 503 (1994). If the legislature has not done so, then sovereign immunity, if properly raised, deprives the court of personal jurisdiction over the State and its agencies. *Lister v. Board of Regents*, 72 Wis. 2d 282, 291, 240 N.W.2d 610, 617 (1976). The State asserts that the legislature has consented to suit against the State only under the very limited circumstances provided in § 775.01, STATS, and that § 775.01 does not apply to a misrepresentation claim because that is a tort claim. The interpretation of a statute and the application of statutory and case law

363

to a set of facts present questions of law, which we review de novo. *See Bahr v. State Inv. Bd.*, 186 Wis. 2d 379, 386, 521 N.W.2d 152, 153 (Ct. App. 1994).

We agree with the State and trial court that the State has not consented to suit in § 775.01, STATS., on Brown's misrepresentation claim, which is a tort.[6] Section 775.01 is limited to claims which, if valid, would render the State a debtor to the claimant. *Cords v. State*, 62 Wis. 2d 42, 50, 214 N.W.2d 405, 410 (1974).[7] Brown has pointed to no other statute which arguably provides for suit against the State in tort, and we are aware of none. *See id.* The trial court therefore properly dismissed the misrepresentation claim.

*Sovereign Immunity—Breach of Contract Claim—§ 775.01, STATS.*

The State asserts that because Brown did not plead facts showing that she complied with the condi-

---

[6] Brown argues that misrepresentation of the terms of a contract is a contract action rather than a tort action, citing *Estate of Chayka*, 47 Wis. 2d 102, 176 N.W.2d 561 (1970). This case holds that there is a covenant implied in every contract of good faith and fair dealing between the parties, and that covenant, when breached, gives rise to a claim in tort that is distinct from a claim for breach of contract, and does not necessarily require that the actual terms of the contract be breached. *Id.* at 108–10, 176 N.W.2d at 564–65. *Chayka* does not support Brown's position that her misrepresentation claim is a contract claim rather than a tort claim, and she has provided no other authority for this position. We therefore do not consider it further.

[7] *Cords v. State*, 62 Wis. 2d 42, 50, 214 N.W.2d 405, 410 (1974), refers to § 285.01, STATS., which has subsequently been renumbered § 775.01, STATS. *See* Laws of 1979, ch. 32, § 53.

tions of § 775.01, STATS., before filing suit, sovereign immunity bars her claims for breach of contract.[8] Brown's position is that compliance with those conditions is optional, but, even if it is required, she has complied. She acknowledges that it is necessary to file a claim with the Board of Claims under § 16.007, STATS., before suing the State, but contends that the language of § 775.01 does not require presentation of a bill to the legislature requesting payment after the claims board has denied a claim. Brown points out that § 16.007(5) expressly requires the Board to report its findings and recommendations on all claims to the legislature, and, if the Board decides a claim should be paid, "it shall cause a bill to be drafted . . . and submit

---

[8] At oral argument, the State presented an additional argument regarding the application of § 775.01, STATS., to the breach of contract claim. It argued that the statute applies only to claims for money "had and received" and this did not include a claim for breach of contract. Therefore, the State contended sovereign immunity barred the breach of contract claim even if Brown had complied with the requirements of § 775.01. We gave the parties the opportunity to present authority on this point, but the supplemental brief the State filed did not address this precise point. We therefore do not consider it further except to observe that in *Trempeleau Co. v. State*, 260 Wis. 602, 605, 51 N.W.2d 499, 501 (1952), in considering the predecessor to § 775.01, the supreme court stated that "a 'debt' is that for which an action of debt or *indebitatus assumpsit* will lie; and includes a sum of money due upon a contract, implied in law . . . ." Recently in *CleanSoils Wis., Inc. v. DOT*, 229 Wis. 2d 600, 610–11, 599 N.W.2d 903, 908–09 (Ct. App. 1999), we considered *Trempeleau* to have established without question that the State is a debtor for purposes of § 775.01 if the complaint alleges that it breached a contract. (We held in *CleanSoils* that the State is also a debtor for purposes of § 775.01 when the claim for breach of contract is brought by a third party beneficiary.)

the drafted bill to the joint committee on finance. . . ."[9] In contrast, Brown notes, there is no express provision in §§ 16.007 or 775.01 requiring a claimant whose claim is denied to submit a bill for payment to the legislature, and no provision in any other statute permitting a private citizen to have a bill drafted and submitted to the legislature. We reject Brown's arguments because we conclude that controlling precedent has construed § 775.01 to require that a claim be refused by the legislature before an action may be commenced.

The original version of § 775.01, STATS., was enacted in 1850 and has remained substantially unchanged.[10] The purpose of the statute is to comply

---

[9] Section 16.007(5), STATS., provides:

(5) FINDINGS. The board shall report its findings and recommendations, on all claims referred to it, to the legislature. Except as provided in sub. (6), if from its findings of fact the board concludes that any such claim is one on which the state is legally liable, or one which involves the causal negligence of any officer, agent or employe of the state, or one which on equitable principles the state should in good conscience assume and pay, it shall cause a bill to be drafted covering its recommendations and shall report its findings and conclusions and submit the drafted bill to the joint committee on finance at the earliest available time. If the claims board determines to pay or recommends that a claim be paid from a specific appropriation or appropriations, it shall include that determination or recommendation in its conclusions. A copy of its findings and conclusions shall be submitted to the claimant within 20 days after the board makes its determination. Findings and conclusions are not required for claims processed under sub. (6) (b).

[10] Laws of 1850, ch. 249 provided in part:

[I]t shall be competent for any person . . . deeming [himself] . . . aggrieved by the refusal of the legislature to allow any just claim against the State, to exhibit and file a petition in the nature of a bill in chancery, setting forth fully and particularly the nature of such claim with the clerk of the supreme court, either in term time or vacation.

with and carry out Article IV, Section 27 of the Wisconsin Constitution. *Chicago, M. & St. P. Ry. Co. v. State*, 53 Wis. 509, 511, 10 N.W. 560, 561 (1881). In that case, the court concluded there were two reasons that the railroad's action to restrain the State from collecting a greater license fee and a penalty was not authorized. First, the complaint did not aver a refusal by the legislature to allow relief from payment of the unpaid fee demanded by the State, and, second, the statute authorized only actions on claims against the State that if valid, would render the State a debtor to the claimant and did not authorize an equitable action to enjoin the State. *Id.* at 512, 10 N.W. at 561. In discussing the first point, the court stated: "The effect of the statute is to make the refusal of the legislature to allow the claim a condition precedent to the right of the claimant to maintain an action on his claim." *Id.*

This construction of the statute has been applied in more recent decisions. *See Lister*, 72 Wis. 2d at 297, 240 N.W.2d at 620 (trial court properly dismissed complaint for tuition refund because § 285.01, STATS., (now § 775.01, STATS.) constituted consent to sue State on this cause of action, but only after claim was first presented to and refused by legislative claims committee); *State ex rel. Teaching Assistants Assoc. v. Univ. of Wis.-Madison*, 96 Wis. 2d 492, 502, n.12, 292 N.W.2d 657, 664 (Ct. App. 1980) (submission to and rejection of claim by legislature is condition precedent to maintaining suit on claim under § 285.01); *Boldt v. State*, 101 Wis. 2d 566, 580, 305 N.W.2d 133 (1981) (§ 775.01 requires that claim against State can be commenced in court only after "the refusal of the legislature to allow a claim"; had Boldt not "first presented his claim to the legislature," it would have been "subject to dismissal"); *CleanSoils Wis. Inc. v. DOT*, 229 Wis. 2d 600, 614–15,

599 N.W.2d 903, 910 (Ct. App. 1999) (confirming dismissal of cross-claims because of failure to comply with § 775.01).

Brown cites *Cords*, 62 Wis. 2d at 52–53, 214 N.W.2d at 411, in support of her construction of § 775.01, STATS., but we do not agree with her reading of *Cords* on this point. In *Cords*, in the context of rejecting a due process challenge to the failure of the legislature to consent to a suit in tort against the State, the court repeated the argument of the State that "in reality the plaintiffs are not denied a hearing," explaining:

> Ch. 16 of the Wisconsin Statutes provides a procedure for submitting a claim to a state claims commission which may recommend to the legislature that the claim be paid. The plaintiffs also could obtain the help of their state representatives in introducing a private bill for their relief.

*Id.* Read in context, this statement does not mean that introducing a private bill is optional before one brings suit on a claim governed by § 775.01. Rather, it means that on claims to which the legislature has not consented to suit under § 775.01, such as tort claims, the claimant has means other than a court action to attempt to obtain payment of the claim: submitting a claim to the state claims commission or having a legislative representative submit a private bill. Both of these actions may be taken by a claimant and may result in payment even if the claim is not one to which the legislature has consented to suit in court under § 775.01.

Because case law has consistently construed § 775.01, STATS., to require submitting a bill to the leg-

islature and having it refused before one may file suit, and because Brown has not brought to our attention a supreme court case overruling this binding precedent, we reject Brown's argument that these procedural steps are optional.

Since Brown did not comply with § 775.01, STATS., prior to filing her complaint, we next consider whether the actions that occurred after Brown filed her complaint constitute compliance with the requirements of § 775.01. The State responds they do not: first, because the legislature did not vote to deny the claim, and second, because the legislature did not deny the claim before the complaint was filed. The first point we have recently decided against the State in *CleanSoils Wis., Inc. v. DOT*, 229 Wis. 2d at 608, 599 N.W.2d at 907. There we concluded that adjournment of the legislative session without passage of a bill constitutes refusal under § 775.01. The second point was not raised in the trial court, and we decline to address it on appeal.

Brown informed the trial court and the State that in her view the presentation of a bill to the legislature and the legislature's adjournment without passing it overcame the State's objections on this point. However, she asked for the opportunity to replead, if the court determined otherwise. If the State disagreed that Brown's actions constituted compliance according to its interpretation of § 775.01, STATS., it should have informed the court of its position, and the reasons therefore, so the court could decide that issue, and also consider Brown's request to replead.[11] We see no indication in the record that the State did so. Instead, in its

---

[11] We observe there is a difference between amending a complaint, and dismissing and refiling a complaint. By relating Brown's request to "replead," we are not deciding whether amending the complaint, rather than dismissing and refiling,

letter in response to Brown's letter reporting the legis-lature's adjournment, the State contended that its motion to dismiss raised "numerous issues in addition to compliance with secs. 775.01 and 16.007," specifi-cally referring to "lack of jurisdiction over the person of the State with respect to plaintiff's claims based on tort and specific performance, and failure to state a claim." This letter implies the State agreed that Brown had complied with § 775.01 because, in listing the reasons the court should not deny its motion to dismiss, the State listed the other grounds in the motion, but excluded any reference to noncompliance with § 775.01.

■

We do not generally consider issues on appeal that were not raised in the trial court, although we have the discretion to do so. *See County of Columbia v. Bylewski*, 94 Wis. 2d 153, 171–72, 288 N.W.2d 129, 138–39 (1980). We decline to consider the question whether compliance after suit was filed was sufficient because we are convinced that would be unfair to Brown. Brown chose to attempt compliance with § 775.01, STATS., once the State raised that issue, even though she main-tained that was unnecessary. Had the State contended in the trial court that Brown, in addition, had either to amend her complaint or dismiss and refile the action, Brown might well have chosen to do so, rather than risk dismissal at a later time by either the trial court or this court. For this reason, we conclude that Brown's breach of contract action is not barred because the leg-islature did not refuse her claim before she filed her complaint.

would have been necessary had the court decided the issue in the State's favor.

*Sovereign Immunity—Breach of Contract—Specific Performance*

We next consider whether the trial court properly dismissed the breach of contract claim because the legislature has not consented to suit for specific performance of a contract. In *Erickson Oil Prod., Inc. v. State*, 184 Wis. 2d 36, 40, 516 N.W.2d 755, 756 (Ct. App. 1994), we held the legislature had not expressly consented to suit for specific performance of a contract for the sale of State surplus real estate. We pointed out that the legislature had chosen to limit the remedy for an alleged breach of contract to that provided in §§ 16.007 and 775.01, STATS., *id.* at 50, 53–55, 516 N.W.2d at 760, 761. The trial court here relied on *Erickson* to dismiss the contract claim, reasoning that although the complaint requested damages and, in the alternative, specific performance, they were the same—the amount of money owed under Brown's view of the contract she alleges she has with the State. We do not agree that *Erickson* requires dismissal of the breach of contract insofar as it requests damages.

Erickson did not sue for money damages for the alleged contract breach, but rather sought only specific performance—an order that the State transfer the real estate as it had allegedly contracted to do. In holding that sovereign immunity barred the latter remedy, we did not suggest that, had Erickson sought damages for the alleged breach in the alternative, it would have been barred by sovereign immunity from that remedy. Indeed, our opinion suggests just the opposite, in that we emphasized that the legislature had limited Erickson's remedy to that available in §§ 16.007 and 775.01, STATS. *Id.* at 50, 516 N.W.2d at 760.

371

It appears the trial court here was influenced by the fact that the amount requested as damages was the present value of the full amount the State was allegedly bound to pay, even though the full amount was not yet due when the complaint was filed or when the court entered its decision. We agree with the trial court that an order directing payment of installments as each becomes due in the future is, in essence, an order for specific performance, which is barred under *Erickson*. However, based on Brown's allegations and her legal theories, at the time the complaint was filed some amount was already due her but was unpaid. Under contract law, one is entitled to the amount overdue as damages for breach of a contract, even if there are questions about entitlement under contract law to future installments. *See* 4 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 966 (1951). The State has provided no authority for the proposition that the legislature has not consented to suit in § 775.01, STATS., for installments allegedly already due under a contract solely because not all installments are yet due. The fact that the amount of damages Brown requested was more than the amount of installments due but unpaid on the date she filed the complaint and on the date the court entered its decision, is not a ground for dismissal of the breach of contract claim on sovereign immunity grounds: it does not go to the type of claim or the type of remedy, but only to the amount of damages. *See id.* § 965 (observing that, in case of an anticipatory breach of unilateral money debt payable in installments, a judgment for present value of full sum promised after proper discount for advance collection is not judgment for specific performance, but rather is judgment for money damages).

The State's argument in support of the trial court's ruling on this point does not persuade us. The State cites *Kruse v. Schieve*, 61 Wis. 2d 421, 431, 213 N.W.2d 64, 69 (1973), which upheld a dismissal of a complaint with leave to amend, because three theories of liability were "commingled" in a single count, and two of the theories were defective. In so ruling the court stated: "allegations [of alternative theories in a single count] are construed as pleading only the least, rather than the greatest allegation, and are fatally defective if the least allegation does not state a cause of action." *Id.* *Kruse* has no bearing on the effect of pleading alternative remedies for one cause of action. Section 802.02(1m), STATS., specifically provides, "Relief in the alternative or of several different types may be demanded." *Kruse* does not require dismissal of a cause of action solely because one of the alternative remedies requested is not available as a matter of law.

We conclude *Erickson* does not preclude suit for damages for a breach of contract against the State, but only suit for equitable relief such as an injunction or specific performance. Since the State has provided us with no authority for precluding the former solely because the latter is sought as an alternative remedy, and since we are unable to discern a logical basis for doing so, we decide that the trial court erred in dismissing the claim for breach of contract insofar as the complaint seeks damages for the breach.

*Failure to State a Claim—Breach of Contract*

Having concluded that Brown's claim for breach of contract for money damages against the State is not barred by sovereign immunity, we consider whether it states a claim for relief. This presents a question of law,

and in our de novo review we take the allegations of the complaint as true, construing them liberally in favor of the plaintiff. *See Irby v. Macht*, 184 Wis. 2d 831, 836, 522 N.W.2d 9, 11 (1994).

The first inquiry is whether the complaint sufficiently alleges that Brown had a contract with the State based upon her purchase of the winning lottery ticket. In *Lucas v. Godfrey*, 161 Wis. 2d 51, 58, 467 N.W.2d 180, 184 (Ct. App. 1991), in the context of a sweepstakes sponsored by a private entity, we concluded that performance by the entrant of the act requested by the sponsor—there, returning an eligibility card—constitutes an acceptance of an offer and forms a binding contract with the promoter. In doing so, we followed the rule that "had been adopted in nearly every other jurisdiction in which the question has arisen, that contract law governs the sponsor-contestant relationship." *Id.* at 57, 467 N.W.2d at 183. Whether contract principles apply when the sponsor is the State is a question of first impression in Wisconsin. However, as with private sponsors, nearly every other jurisdiction considering the issue has concluded that the relationship between a lottery ticket holder and the state lottery agency is primarily contractual in nature, and that the purchase of a ticket in the proper manner constitutes acceptance of an offer, forming a binding contract.[12]

---

[12] *See Hair v. State*, 2 Cal. Rptr. 2d 871, 874 (Cal. Ct. App. 1991); *Peterson v. District of Columbia*, 673 A.2d 664, 665, (D.C. 1996); *Haynes v. Dep't of Lottery*, 630 So. 2d 1177, 1179 (Fla. Dist. Ct. App. 1994); *Kentucky Lottery Corp. v. Casey*, 862 S.W.2d 888, 889 (Ky. 1993); *Coleman v. State*, 258 N.W.2d 84, 86 (Mich. Ct. App. 1977); *Estlow v. New Hampshire Sweepstakes Comm'n*, 449 A.2d 1212, 1213, (N.H. 1982); *Driscoll v. State Dep't of Treasury*, 627 A.2d 1167, 1171 (N.J. Super. Ct. Law Div.

The State does not argue that we should not adopt the approach of other jurisdictions, but instead limits

1993); *Fujishima v. Games Management Serv.*, 443 N.Y.S.2d 323, 327 (N.Y. App. Div. 1981); *Woodbridge Partners Group, Inc. v. Ohio Lottery Comm'n*, 650 N.E.2d 498, 500 (Ohio Ct. App. 1994); *Valente v. Rhode Island Lottery*, 544 A.2d 586, 589 (R.I 1988); *Parsons v. South Dakota Lottery Comm'n*, 504 N.W.2d 593, 597 (S.D. 1993); *Stewart v. Texas Lottery Comm'n*, 975 S.W.2d 732, 736 (Tex. App. 1998); *Thao v. Control Data Corp.*, 790 P.2d 1239, 1241 (Wash. Ct. App. 1990).

The State has brought to our attention only one case, which, it asserts, does not follow the majority rule, *Smith v. State Lottery Comm'n*, 701. N.E.2d 926, 930 (Ind. Ct. App. 1998). In *Smith*, the court concluded that under the applicable regulations and statutes the action was not a contract claim but rather an appeal from an agency order, governed by the administrative procedure act regarding judicial review. *Id.* at 933. In rejecting the plaintiff's argument that the court had subject matter jurisdiction to hear the claim for breach of contract, the court stated: "At best, the sale of instant game tickets might establish a quasi-contract between the Lottery and the player, but even so, the rules and regulations of the Lottery Commission apply. . . ." *Id.* at 930. *Smith* concerns the question whether the court had subject matter jurisdiction to hear the claim as an original action rather than an appeal from an agency order, and therefore does not fully address the nature of the relationship between the ticket player and the lottery. The State in this case does not explain why the reasoning of the *Smith* court is applicable here, nor argue that statutes or regulations in Wisconsin require that Brown seek relief through administrative procedures and judicial review. The State did apparently make an argument similar to that before the trial court, and the court rejected it. The court concluded that Brown had already presented her claim to the Lottery Board, which denied the claim, and the State had not specified any other actions that Brown was required by statute or regulation to take. The State does not renew this argument on appeal.

argument on this point to a suggestion that "we may wish to consider" two Wisconsin supreme court decisions: *Cords*, 62 Wis. 2d at 55, 214 N.W.2d at 412, and *Morrison v. Board of Educ.*, 237 Wis. 483, 487, 297 N.W. 383 (1941). In *Cords* the court concluded that the statute making the State an insurer of tortious employees did not make it subject to direct suit by an injured person because the State had issued no policy of insurance, had entered into no agreement with employees, and could, in fact, repeal the statute at any time without depriving any state employee of a vested right. In *Morrison*, the court concluded that a statute providing that teachers could be dismissed only for cause did not create a contractual right for an individual teacher that could not be abrogated by a later statute requiring retirement at age sixty-five. Neither *Cords* nor *Morrison* refers to a specific transaction that could be characterized as a contract between an individual and the State, but instead both depend solely on statutory language. Accordingly, the rejection of a contractual relationship in those cases does not aid in our resolution of the issue before us.

We adopt the rule of the courts in other jurisdictions that have treated the purchase of a lottery ticket upon the prescribed terms as an acceptance of an offer that creates a binding contract with the State or state lottery agency. We are persuaded that this is a sound approach because it comports with the realities of the relationship and is not inconsistent with any applicable statutes or regulations. We conclude, therefore, that the complaint does allege a contract between Brown and the State. However, the complaint states a claim for breach of contract only if the complaint sufficiently alleges that the State breached the terms of its contract with Brown. More specifically, the inquiry is:

does the complaint sufficiently allege that the State breached a term of the contract by refusing to pay Brown the prize in monthly installments rather than annual installments?

Brown acknowledges the complaint does not allege that any material prepared by the State expressly promised to pay the winning ticket holder in monthly installments. Her position, rather, is that the State's failure to specify that the installments are annual in the materials Brown saw before she purchased the ticket created an ambiguity. She argues that her understanding that the installments were monthly must be taken as establishing the payment term for purposes of a motion to dismiss, in light of the principle of contract construction that contracts are to be interpreted to ascertain the intent of the parties. She also relies on another principle of contract construction—ambiguous contracts are construed against the drafter, especially where there is a disparity in bargaining power—to support her argument that the term of the contract is as Brown understood it.

We do not agree that these principles of contract construction provide the proper framework for ascertaining the terms of the contract between Brown and the State. Although we have held that Brown does have a contract with the State, it does not automatically follow that all principles of contract law and contract construction are applicable. The significant facts of this contract are that one party is the State, and the subject of the contract is the state lottery, which is established and governed by state law. These facts bring into play two important principles, both firmly embedded in Wisconsin law. First, a state agency has only those powers expressly granted to it or necessarily implied. *Brown County v. DHSS*, 103 Wis. 2d 37, 43, 307

N.W.2d 247, 250 (1981). Second, all persons are presumed to know state law. *See Krause v. Mass. Bay Ins. Co.*, 161 Wis. 2d 711, 718, 468 N.W.2d 755, 758 (Ct. App. 1991). These principles underlie the rulings in other jurisdictions that the terms of the contract between the purchaser of a lottery ticket and a state or state agency include, and are subject to, the statutes governing the lottery and the rules and regulations promulgated pursuant to that authority. *See, e.g., Driscoll*, 627 A.2d at 1171; *Hair*, 2 Cal. Rptr. 2d at 874; *Stewart*, 975 S.W.2d at 736. We agree with these rulings and conclude the starting point for analyzing the terms of Brown's contract is the governing statute, not the principles of contract construction on which Brown relies.

State lottery is defined in § 565.01(6m)(a), STATS. (emphasis added), as follows:

> "The state lottery" means an enterprise, including a multijurisdictional lottery in which the state participates, in which the player, by purchasing a ticket, is entitled to participate in a game of chance in which any of the following applies:
>
> . . . .
>
> 2. The ticket is evidence of the numbers or symbols selected by the player or, at the player's option, randomly selected by a computer, and the player becomes entitled to a prize *as prescribed in the features and procedures for the game* . . . if some or all of the player's symbols or numbers are selected in a chance drawing or game. . . .

Section 565.27(1), STATS. (footnote added), provides:

> **Lottery games**. (1) GAME FEATURES AND PRO CEDURES. Subject to this section, the rules promul-

gated under s. 565.02 (3) (d) and (4) (a)[13] and approval by the secretary of revenue, the administrator shall determine the particular features of and procedures for each lottery game offered. The features and procedures shall be in writing, shall be accessible to the public and shall include all of the following:

(a) The theme and name of the game.

(b) The price of lottery tickets or lottery shares and any discount authorized for the price.

(c) The prize structure, including the number and value of prizes.

(d) The frequency of drawings or other winner selections.

(e) The method of selecting winners.

(f) The method of making payment to winners.

We conclude the features and procedures are part of the contract between Brown and the State and prescribe the terms upon which the State agrees to make payments to winners. The complaint alleges that the features and procedures is on file at the defendants' offices and contains a statement that the WVOM installment payments are paid over twenty-five years.[14] Thus, according to the complaint, the features

---

[13] Section 565.02(3)(d), STATS., requires DOR to promulgate rules determining the types of lottery games to be offered under § 565.27, STATS., and para. (4)(a) authorizes, but does not require, DOR to implement the provisions of this chapter. The parties have not brought to our attention any regulations promulgated by DOR that relate to this appeal, and we are aware of none.

[14] On the day of oral argument before this court, the State submitted the affidavit of the administrator of the Division of Lottery with a copy of the features and procedures for Wisconsin's Very Own Megabucks. Brown objected to our consideration

and procedures unambiguously provide for installments paid over twenty-five years, not twenty-five months.

We do not agree with Brown that the failure of the State to specify, in every piece of informational material, that the twenty-five installments are annual rather than monthly, alters this term of the contract or makes it ambiguous. First, as we have noted above, Brown is presumed to know the applicable law and, thus, to know that the features and procedures specify the terms upon which she is entitled to payment of the prize. Second, DOR is neither expressly nor implicitly authorized to make payments to winners in a manner other than as specified in the features and procedures. Third, as the complaint alleges, there was a brochure available to anyone who went to Brown's local lottery office that expressly and unambiguously explained that the WVOM jackpot prize was paid by annuity over twenty-five years. Thus, the contents of the features and procedures, at least as relevant to this dispute, were accessible to her.

Brown emphasizes that § 565.30(2m), STATS., provides that if the prize is monetary and "is payable in installments over a period of years, any informational material about the lottery must state the number of years over which the prize shall be paid." Based on the allegations of the complaint, it appears that DOR violated this provision in that not all the informational materials specified the number of years over which the installment would be paid. However, this violation

of this document for a number of reasons and renewed this objection by written motion. We grant this portion of Brown's motion. We do not consider the affidavit and attachment, but confine ourselves to the allegations in the complaint.

does not change the terms of the contract and make the annual installments monthly.

Because the terms of Brown's contract with the State include the features and procedures and because those unambiguously provide for installment payments over twenty-five years, we conclude payment of the prize over twenty-five annual installments is a term of Brown's contract with the State. We further conclude the principles of contract construction on which Brown relies are not applicable in this case to alter or dispute that term. Accordingly, her complaint does not state a claim for breach of contract.

*Sovereign Immunity—Declaratory Judgment*

Brown's third claim is for a declaratory judgment that the State violated § 565.30(2m), STATS., because some of the informational materials prepared by the State did not specify the number of years over which the installments of the prize would be paid. Brown contends that the trial court erred in dismissing this claim and she relies on *Lister*, 72 Wis. 2d at 282, 240 N.W.2d 610 (1976). She reads *Lister* to hold that an action for a declaratory judgment construing a statute is really a claim for damages and may be pursued against the State if there is compliance with § 775.01, STATS. We agree with the State's response that *Lister* does not support Brown's position. The teaching of *Lister* is that the declaratory judgment statute does not modify or alter the State's immunity from suit. *See id.* at 308–09, 240 N.W.2d at 625. When the purpose of the declaratory ruling is to establish the State's liability for the payment of money, it is, in effect, one for damages. *See id.* In other words, the doctrine of sovereign immunity applies just as it would were damages directly

381

requested. *See id.* The pertinent inquiry under *Lister*, therefore, is whether the legislature has consented to suit against the State for a violation of § 565.30(2m).

Brown appears to assume that a violation of § 565.30(2m), STATS., makes the State a debtor within the meaning of § 775.01, STATS., just as the State is when it owes money under a contract or, as in *Lister*, when it has received money which it allegedly has no right to retain. However, she offers no support for this assumption. We conclude that § 775.01 is not a consent to suit for damages for a violation of § 565.30(2m).

We acknowledge that sovereign immunity does not bar a suit for a declaratory ruling that an individual state official or agency has violated a statute when there is an anticipatory or preventive purpose for the ruling; the underlying theory is that the suit is not really against the State because the officer or agency is acting in excess of his, her or its authority. *See Lister*, 72 Wis. 2d at 307–09, 240 N.W.2d at 625. However, Brown's complaint alleges that subsequent to her notice to the State of her understanding of the payment terms, the State added the language on the back side of the online ticket stock to state, "Jackpot is pari-mutuel and paid in 25 annual installments." It is therefore not apparent from the complaint, or from Brown's brief, that there is any purpose for the declaratory judgment other than to establish the State's liability for damages on a claim barred by sovereign immunity.[15]

---

[15] Brown moved to strike supplemental briefs filed by the State after oral argument on the grounds that permission from this court was not first obtained, or the briefs contained points not previously raised, or they were beyond the scope directed by this court. We deny the motion (except insofar as we grant it concerning the Division administrator's affidavit). This case

*By the Court.*—Order affirmed.

raises a number of significant legal issues; we invited additional argument on specific points; and, to the extent that either party's filings were beyond that which we specifically requested, we are satisfied that both parties had the opportunity to respond to any new or unsolicited argument.